**In re GRAND JURY INVESTIGATION, Joseph B. Sturgis, Esq., Witness.**

**Misc. No. 76–26.**

United States District Court, E. D. Pennsylvania.

April 30, 1976.

As Amended May 24, 1976.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for petitioner.

Ross Van Denbergh, Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This matter involves the nature and scope of the attorney work product doctrine as it applies to grand jury witnesses.

In connection with its investigation of certain bank loan transactions, the grand jury issued a subpoena duces tecum to the respondent, an attorney with a law firm which represents the bank. The bank, as client, waived the attorney-client privilege, but the witness asserted the work product doctrine in refusing to produce eight particular documents from his legal files or to answer related questions. The United States, on behalf of the grand jury, moved for an order compelling full compliance with the subpoena.[1] The matter at issue can be understood only in light of the unusual nature of the criminal investigation which underlies it and which may be summarized as follows.

■ The grand jury suspects that certain bank customers may have made false statements in applying for loans, in violation of 18 U.S.C. § 1014. Also under investigation, however, is the possibility that certain bank officers, knowing that criminally false statements had been made in loan applications, actively concealed that information from responsible authorities, in violation of 18 U.S.C. § 4, which forbids misprision of felony.[2] Thus, the advices of counsel to bank employees regarding the legal effect of particular statements in loan applications could bear on whether the bank or its officers had "knowledge of the actual commission of a felony," an element of misprision. Concomitantly, the bank officers' knowledge of their obligation (if any) to report what they knew might, in the grand jury's view, bear on their criminality *vel non*.

Because of the very nature of the suspected crime, then, this is probably a rare case where the advices of counsel might be "relevant to an investigation being conducted by the grand jury and properly within its jurisdiction" under the test of *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 93 (3d Cir. 1973); see also *Schofield II*, 507 F.2d 963 (3d Cir. 1975). And even in this case we probably would not have been required to reach the questions discussed below had there not been a waiver of the attorney-client privilege. The precise documents at issue are two memoranda of law researched by associates of the respondent and the notes underlying one of them; a draft of a letter, never ultimately sent, from respondent to a bank officer; a page of respondent's handwritten notes to himself on legal questions involved in the loan transactions; and memoranda for the file of three telephone conversations with bank officers or employees.

■ We observe preliminarily that we are disturbed by the practice of calling a lawyer before a grand jury which is investigating his client, especially where the government does not have good grounds for belief that the lawyer possesses unprivileged, relevant evidence that cannot be obtained elsewhere. The dangers and disadvantages of the practice have been demonstrated in such cases as *In re Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y.1966); *In re Kinoy*, 326 F.Supp. 400 (S.D.N.Y.1970); and *In re Stolar*, 397 F.Supp. 520 (S.D.N.Y. 1975). The practice permits the government by unilateral action to create the pos-

---

1. We received memoranda of law from the government and from respondent, and held two hearings. In addition, we have received *in camera* and inspected relevant excerpts of grand jury testimony (from the government pursuant to Fed.R.Crim.P. 6(e)) and an affidavit (from respondent).

2. *Cf.* 18 U.S.C. § 1005 (false statement of bank officer to deceive Comptroller of Currency, FDIC or Federal Reserve); 12 U.S.C. § 503 (personal civil liability for same).

sibility of a conflict of interest between attorney and client, which may lead to a suspect's being denied his choice of counsel by disqualification. The very presence of the attorney in the grand jury room, even if only to assert valid privileges, can raise doubts in the client's mind as to his lawyer's unfettered devotion to the client's interests and thus impair or at least impinge upon the attorney-client relationship. The importance of that relationship and of its protection have only recently been reiterated by the Supreme Court:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper [preparation] of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

United States v. Nobles, 422 U.S. 225, 237, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141, 153 (1975), quoting Hickman v. Taylor, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947). Moreover, as Justice Jackson noted in his Hickman concurrence:

[I]t too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. Law-abiding people can go nowhere else to learn the ever changing and constantly multiplying rules by which they must behave and to obtain redress for their wrongs. The welfare and tone of the legal profession is therefore of prime consequence to society, which would feel the consequences of such a practice as petitioner urges secondarily but certainly.

329 U.S. at 514–15, 67 S.Ct. at 395, 91 L.Ed. at 464, cited in Nobles, supra, 422 U.S. at 237, 95 S.Ct. at 2169, 45 L.Ed.2d at 153. But to say the practice is bad or distasteful is not to say it is unlawful, as Judge Frankel made clear in Kinoy, supra. The government has pressed for respondent's appearance before the grand jury, and we accordingly proceed to consider whether he must comply with the subpoena.

We agree with respondent that work product is a valid ground on which to refuse a grand jury's subpoena or questioning. In United States v. Nobles, 422 U.S. 225, 236–40, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141, 152–153 (1975), the Supreme Court held that the work product doctrine, first authoritatively enunciated in the context of civil discovery in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), aff'g 153 F.2d 212 (3d Cir. 1945) (en banc), also gives rise to a qualified testimonial privilege assertable by a witness in a criminal trial.[3] Under Fed.R.Evid. 1101(c),

---

**3.** Justice Murphy, speaking for the majority in Hickman, stated that work product was exempt from civil discovery, either absolutely or qualifiedly depending on its nature, "not because the subject matter is privileged or irrelevant, as those concepts are used in [the Rules of Civil Procedure]," 329 U.S. at 509, 67 S.Ct. at 392, 91 L.Ed. at 461, but because:

> an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollection prepared or formed by an adverse party's counsel in the course of his legal duties . . . contravenes the public policy underlying the orderly prosecution and defense of legal claims. . . . [T]he general policy against invading the privacy of an attorney's

course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through subpoena or court order.

Id. at 510, 512, 67 S.Ct. at 393, 394, 91 L.Ed. at 462, 463. Concurring in Nobles, Justices White and Rehnquist would have adhered to the "policy" rather than "privilege" characterization of work product. 422 U.S. at 242–52, 95 S.Ct. at 2172–77, 45 L.Ed.2d at 156–61. In holding that the work product doctrine gives rise to a qualified evidentiary privilege, the Nobles majority did not overrule Hickman's position that work product is not itself a privilege when asserted in civil discovery. Cf. Fed.R.Civ.P. 26(b)(3).

(d)(2), evidentiary privileges also apply in grand jury proceedings.[3A] Accordingly, we hold that a grand jury witness may resist questioning or a subpoena on grounds that it calls for the production of work product.[4]

■ In *Nobles*, as in *Hickman*, the material in controversy was an attorney's written report of an investigative interview with a witness. The Court held that by calling as a trial witness the investigator who made the report, Nobles waived the work product privilege. 422 U.S. at 239–40, 95 S.Ct. at 2170–71, 45 L.Ed.2d at 154–55. Having found this privilege waived in any case, the Court had no need to define its scope. The Court in *Hickman* indicated

that the important public policy supporting the privacy of an attorney's file in preparing for adversary litigation was qualified in some circumstances by the legitimate demands of factfinding in civil cases, and Fed.R.Civ.P. 26(b)(3) now codifies this view. We cannot say that this same policy would fare better in the grand jury context than in the civil setting, or than did the First, Fourth, and Fifth Amendment, legislative or executive privileges considered in several recent grand jury cases.[5] In sum, we think the work product privilege assertable in bar of grand jury inquiry is essentially coextensive with the work product doctrine applicable to civil discovery, from which the qualified testimonial privilege derives.

**3A.** In pertinent part, Fed.R.Evid. 1101 provides:

(c) *Rule of privilege.* The rule with respect to privileges applies at all stages of all actions, cases, and proceedings.

(d) *Rules inapplicable.* The rules (other than with respect to privileges) do not apply in the following situations:

.     .     .     .     .

(2) *Grand jury.* Proceedings before grand juries.

The "rule with respect to privileges" referred to in Rule 1101(c) is Fed.R.Evid. 501, which provides in relevant part:

[T]he privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

While *Hickman* held that work product was not a privilege as that concept is used in the civil discovery rules, the Court noted that in English law work product has come to be regarded as privileged. 329 U.S. at 510, 67 S.Ct. at 393, 91 L.Ed. at 462 n.9. We believe that *Nobles* is an "interpret[ation]" of "the principles of the common law" within the meaning of Rule 501, insofar as that opinion articulated a privilege analysis of work product in the criminal context.

**4.** Other courts facing this issue prior to *Nobles* or the promulgation of the Federal Rules of Evidence reached the same conclusion on different grounds. See *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840 (8th Cir. 1973); *In re Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y.1966) (Frankel, J.). Even Justices White and Rehnquist, whose concurring opinion in *Nobles* takes the position that the work product doctrine does *not* also define an evidentiary privilege, 422 U.S. at 242–54, 95 S.Ct. at 2172–77, 45 L.Ed.2d at 156–63 (*see* note 3 *supra*), acknowledged the partial similarity of grand jury

proceedings to civil discovery and recognized that a work product claim might be properly upheld there. *Id.* at 247 n. 5, 95 S.Ct. at 2174, 45 L.Ed.2d at 158. See also *In re Grand Jury Investigation (Delphi Capital Corp.)*, Misc. No. 75–192 (E.D.Pa., filed March 11, 1976) (Higginbotham, J.).

**5.** *See, e. g., United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (no Fourth Amendment privilege to refuse to answer grand jury questions derived from fruits of unlawful search); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (no Fourth or Fifth Amendment privilege to refuse voice exemplar); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (same: handwriting exemplar); *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (no First Amendment privilege for news reporters to protect confidential sources); *Gravel v. United States*, 408 U.S. 606, 627–29, 92 S.Ct. 2614, 2628–29, 33 L.Ed.2d 583, 603–605 (1972) (no "judicially fashioned privilege," *id.* at 627, 92 S.Ct. at 2628, 33 L.Ed.2d at 603, protects Senator's aide beyond precise scope of Constitutional Speech & Debate Clause); *In re Grand Jury Impaneled Jan. 21, 1975 (Freedman)*, 529 F.2d 543 (3d Cir. 1976) (senior partner with sole access to certain records still cannot assert Fifth Amendment privilege as to files of law firm), *cert. denied*, 44 U.S.L.W. 3670 (May 24, 1976); *cf. United States v. Nixon*, 418 U.S. 683, 707–13, 94 S.Ct. 3090, 3107–10, 41 L.Ed.2d 1039, 1063–66 (1974) (President's presumptive executive privilege is qualified by "demonstrated, specific need for evidence in a pending criminal trial." *Id.* at 713, 94 S.Ct. at 3110, 41 L.Ed.2d at 1067). *See generally Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D.Pa. 1975).

██ One important limitation upon the work product doctrine is temporal: if the documents in question were not produced "in the course of preparation for possible litigation after a claim has arisen," *Hickman, supra,* 329 U.S. at 497, 67 S.Ct. at 387, 91 L.Ed. at 455, then they cannot be work product as that term has come to be defined.[6] If respondent's papers predate that time, difficult though it may be to pinpoint, irrelevance under *Schofield, supra,* and attorney-client privilege are the only applicable defenses to their production.[7] In view of the respective times at which the documents in question were written and in the light of the record before us, we grant the grand jury's motion to compel compliance with respect to five items and deny it with respect to the remaining three.

The respondent acknowledges that the first actual notice he had that the bank (or its officers) might be involved in adversarial, criminal litigation was on or about May 25, 1975, when the first subpoena was served on a bank officer. Respondent seeks to define as work product all legal documents prepared after February 5, 1975, because he claims that is when he realized that his client might be exposed to a claim of wrongdoing. That, he says, is when his legal work began to be "in anticipation of" this grand jury investigation and possible ensuing criminal prosecutions against his clients.

██ Neither respondent's *in camera* affidavit nor the pertinent extracts of his grand jury testimony support the position he asserts. In his affidavit, respondent said:[8]

[An event occurring on] or shortly prior to Friday, February 7, 1975 [, . . . .] indicated to me that [certain bank customers] might have engaged in activities in connection with obtaining loans which might, if done with intent, constitute criminal conduct and, assuming criminal conduct had in fact occurred, that [the] Bank might have an obligation, upon the pain of criminal sanction, to report such conduct to some appropriate governmental official.

Subsequent to February 7, 1975, but prior to February 12, 1975[,] I requested [an] associate . . . to research the question . . . , assuming [a bank customer had engaged in] criminal conduct . . . , whether [the] Bank had any legal obligation to report such conduct.

· · · · ·

After receiving [the] memorandum . . . I drafted a letter to . . . an Officer of [the Bank] concerning [my associate's] and my own thoughts on the issue . . . .

Advising a client about matters which may or even likely will ultimately come to litigation does not satisfy the "in anticipation of" standard. The threat of litigation must be more real and imminent than that. Compare *Abel Investment Co. v. United States,* 53 F.R.D. 485 (D.Neb.1971), with *Arney v. Geo. A. Hormel & Co.,* 53 F.R.D. 179 (D.Minn.1971), and *Congoleum Industries, Inc. v. GAF Corp.,* 49 F.R.D. 82, 86 (E.D.Pa. 1969). See *Duffy, supra* note 4, 473 F.2d at 847; cf. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir.

---

**6.** Fed.R.Civ.P. 26(b)(3), which defines when and to what extent work product is immune from civil discovery, uses the expression "prepared in anticipation of litigation or for trial."

**7.** We reiterate that respondent's client expressly waived the attorney-client privilege. Respondent did not assert a *Schofield* relevance objection; hence, we have no occasion to rule on that question. *See* discussion in text following note 2 *supra.*

As a practical matter, the mental impressions and legal opinions of lawyers, even if not within the work product rule, are generally immune from discovery because they are irrelevant or privileged or the opinion of an expert not listed as a trial witness. Cf. *Truck Ins. Exch. v. St. Paul Fire & Marine Ins. Co.,* 66 F.R.D. 129 (E.D.Pa.1975), in which our colleague Judge Raymond Broderick held that where an attorney's trial preparation materials were themselves directly at issue in a case, they were not protected by Fed.R.Civ.P. 26(b)(3).

**8.** Respondent, by counsel, has agreed to our publication of the following redacted excerpts from his *in camera* affidavit.

1974) (Adams, J., 3d Cir., on the panel), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975) (documents prepared in anticipation of prior unrelated litigation are covered; distinctions in treatment between facts and mental impressions). Nothing before us suggests that prior to May 25, 1975, respondent did any more than seek to define, as its counselor, the bank's present and future obligations. That activity is not within the work product protection of an attorney's investigative and strategic efforts on behalf of a client in litigation. Accordingly, the five subpoenaed items dated prior to May 25, 1975, are not immune from production as work product.

The three remaining items need not be produced. The first, a file memorandum of a telephone conversation between respondent and a bank officer, is in the pure *Hickman* category of an attorney's notes of his conversation with a witness, never shown to or approved by the witness himself. Such notes are so much a product of the lawyer's thinking and so little probative of the witness's actual words that they are absolutely protected from disclosure. *Hickman, supra*, 329 U.S. at 512–13, 67 S.Ct. at 394, 91 L.Ed. at 463; *Nobles, supra*, 422 U.S. at 252–54, 95 S.Ct. at 2177–78, 45 L.Ed.2d at 161–63 (White & Rehnquist, JJ., concurring); *cf. Goldberg v. United States*, —— U.S. ——, ——, 96 S.Ct. 1338, 1344–46, 47 L.Ed.2d 603, 613 (1976); *Palermo v. United States*, 360 U.S. 343, 352–53 (1959) (interrelationship of work product and Jencks Act); but see *In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F.Supp. 381, 393 (S.D.N.Y.1975). Respondent also need not produce or answer questions about the memorandum of law and supporting notes from October 1975. Nothing falls more clearly within the area protected by the work product doctrine than the legal advice counsel may have given or considered giving a client during ongoing litigation.