**In the Matter of GRAND JURY SUBPOENA.[1]**

No. M11–188.

United States District Court,
S. D. New York.

Oct. 12, 1977.

Robert B. Fiske, Jr., U. S. Atty., and John P. Flannery II, Asst. U. S. Atty., New York City, for U. S. Government.

Bartel, Engelman & Fishman, New York City, for petitioner; Monroe H. Freedman, Myron Engelman, Michael T. Sullivan, New York City, of counsel.

STEWART, District Judge.

This is a motion by an attorney ("Lawyer") to quash a subpoena commanding him to appear before a grand jury investigating possible fraud and possible plots to obstruct that investigation. Lawyer is an attorney whose firm represents a subject of the investigation ("Subject").

FACTUAL BACKGROUND

Subject was served with a subpoena duces tecum on or about July 25, 1977, returnable August 3, 1977, requiring it to present to the grand jury certain documents or records in its possession. Lawyer's firm was retained by Subject on August 1, 1977, to represent it in the grand jury investigation. Upon initial investigation, Lawyer was in-

1. Because this memorandum relates to an ongoing grand jury investigation, all references to parties and subject matter of the investigation have been fictionalized.

formed by Subject that there had been a burglary of Subject's premises some time prior to June 22, 1977,[2] and that most of the records sought by the subpoena were stolen in the burglary. Because it was not immediately clear which of the records had been stolen and, therefore, the extent of the clients' ability to comply with the subpoena was unknown, a member of Lawyer's firm submitted an affidavit stating the facts as known to him in support of a motion to modify the subpoena. Judge Goettel granted the motion in part extending the time to respond to the subpoena to August 8, 1977, and ordered that the facts surrounding the burglary be explained.

Lawyer proceeded to investigate the theft of the records, interviewing his clients and other persons with knowledge of the storage and theft of the documents. According to Lawyer, he intended that one of his clients would submit an affidavit setting forth the facts; but the clients refused to do so, citing the embarrassment that would result if their names were to be leaked in connection with grand jury testimony.[3] Instead, Lawyer submitted the affidavit in his own name, stating some facts of his own knowledge and others on information and belief. The essence of the affidavit is that there was a burglary of Subject's premises, which was reported on June 22, 1977, and that among the missing items were most of the records sought by the subpoena issued July 25, 1977.

The Government now seeks to have Lawyer testify before the grand jury. It is claimed that Lawyer was being used by Subject to obstruct the grand jury in its investigation of possible fraud when he submitted his affidavit containing facts related to him by Subject. Those facts, the Government contends, are untrue, in that either there was no burglary or, if there was a burglary, no records were stolen.[4] Lawyer, therefore, is claimed to be an unwitting instrument in Subject's plot to obstruct the investigation, because it was through his affidavit that the allegedly false facts were brought before the grand jury.[5]

Lawyer seeks to quash the subpoena in its entirety. His communications with Subject are asserted to fall within the attorney/client privilege and thus may not be related to the grand jury. His interviews with other persons and with his clients he claims are privileged as attorney's work product.

## ATTORNEY/CLIENT PRIVILEGE

As far as can be ascertained from the record, Lawyer interviewed two, possibly three, persons who are officials of Subject in putting together the facts in his affidavit. The relationship between Lawyer and the officials of Subject is, of course, one of attorney/client. The questions before this Court are then, whether the communications between Lawyer and his clients were privileged, and, if so, whether the privilege has been waived.[6]

2. June 22nd was the day the theft was reported to the police, shortly after its discovery, although it is not claimed that the theft took place on or near that day. Subject's premises had been closed for the winter, and the theft may have gone undiscovered for some time since the premises were not utilized since September of the previous year.

3. The record is by no means clear as to the existence and extent of any leaks of prior grand jury testimony relating to this investigation, although Judge Owen apparently did order that claims of such leaks be investigated.

4. The Government has submitted an *in camera* affidavit *in support of* its position, containing matters which conceivably could be brought before the grand jury.

5. This Court cannot emphasize too strongly that there is not the slightest implication that Lawyer has conducted himself with anything but the highest integrity in this matter. The record does not reflect, nor does the Government suggest, even a hint of wrongdoing on Lawyer's part.

6. Subsequent to the submission of Lawyer's affidavit to the grand jury, he was asked to and did supply the names of two of the officials with substantive knowledge of the storage and theft of the records, with whom he spoke in preparing his affidavit. Those two officials were later called and testified before the grand jury concerning the circumstances surrounding the burglary, *infra*.

 We assume for purposes of analysis that the communications were privileged,[7] but find that with respect to Lawyer's clients who testified before the grand jury, the attorney/client privilege has been waived, for two reasons. First, Lawyer's affidavit purports to set forth the sum and substance of his clients' communications to him concerning the storage and theft of the records. Second, Lawyer's clients were asked questions before the grand jury concerning what they had told Lawyer about the storage and theft of the records, and they answered, apparently unhesitatingly.[8] Under the circumstances, communications made between Lawyer and his clients had already been revealed in some detail, with the privilege knowingly waived by the clients. We find therefore that Lawyer's assertion of the attorney/client privilege, in light of all that has gone before, must fail. However, our inquiry does not end here.

## WORK PRODUCT PRIVILEGE

Lawyer seeks to avoid testifying before the grand jury regarding all matters revealed to him in his investigation, asserting that all communications and all factual materials assembled in his investigation are protected by the work product privilege. The Government is seeking to have Lawyer reveal the sources and substance of all communications. We conclude that the Government has not demonstrated its need to bring Lawyer before the grand jury and to compel him to disclose such information.

As Judge Frankel stated in *In re Terkeltoub*, 256 F.Supp. 683, 686 (S.D.N.Y.1966), "disclosure of this kind will be compelled only in a 'rare situation' that may justify 'an exception to the policy underlying the privacy of [the attorney's] professional activities'. *Hickman v. Taylor*, [329 U.S. 495, 513, 67 S.Ct. 385, 395, 91 L.Ed. 451 (1947)]. . . . But we are not persuaded, balancing the claim of need for the testimony against the potential hurt of it, that there is any sufficient justification in this case." Applying Judge Frankel's balancing test to the facts here, we are also not persuaded that there is sufficient justification to compel Lawyer to appear and testify before the grand jury.

 The Government seeks to establish that the subpoenaed records were in fact not stolen and that there is a plot to concoct a story about the missing records. Without making a judgment as to whether the records were actually stolen or whether there is a plot to obstruct the grand jury's investigation, it seems apparent that the Government has at its disposal all that it needs to

---

7. The normally privileged communication between an attorney and his or her client loses its privileged status if the Government is able to make a prima facie showing that the conversation related to an intended or ongoing illegality. *Matter of Doe*, 551 F.2d 899, 901 (2d Cir. 1977). The fact that the attorney may have been unaware of the illegality is of no consequence. *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir.) *cert. denied* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). We need not decide whether the Government has made or could make the requisite showing, since we are of the opinion that the attorney/client privilege, if any exists here, has been waived.

8. Prior to clients' appearances before the grand jury, an agreement was reached by the Government and Lawyer's firm limiting the scope of the questioning to "the storage and theft of [Subject's] records, reports that have been made regarding the theft, and any other efforts that might have been made to recover the stolen documents". (Lawyer's Exhibit "B", a letter from a member of Lawyer's firm to a Government attorney, dated August 19, 1977). We have reviewed the transcript of the clients' grand jury testimony and it appears that most of the questions were within the agreed scope. However, we make no finding as to whether particular questions were outside the scope of the agreement. (At one point in his testimony, one of the witnesses stated that he thought a series of questions to be beyond the scope of the agreement. He then stated that he was answering them voluntarily. The witness had been advised that he could consult his counsel, who was outside the grand jury, before answering any question.) Of particular relevance here is the fact that those questions which inquired of the witnesses what they had told Lawyer concerning the storage and theft of the records were clearly within the agreed scope.

conduct its investigation, without requiring Lawyer to appear before the grand jury. Lawyer has already provided the grand jury with an affidavit summing up his investigation. Further, Lawyer has offered to provide the grand jury with a list of persons with whom he spoke in the course of his investigation. The Government can call them as witnesses and provide the grand jury with their direct, rather than hearsay, testimony. Although the Government is normally free to introduce hearsay testimony before the grand jury, we see no reason to permit it to do so here, in abrogation of the asserted privilege, where witnesses are readily available to the Government to provide firsthand testimony.

Under these circumstances, where the Government has made an insufficient showing of need for Lawyer's testimony, the Court sees no "overriding necessity" to compel his appearance before the grand jury, and finds that there is "no showing of the kind of vital, urgent, and immediate need for the unique knowledge that might warrant the extraordinary compulsion the Government seeks." *In re Terkeltoub, supra,* 256 F.Supp. at 686.[9]

Even if we were to decide that the communications related to a continuing illegality, we would still hold them protected under the circumstances here, *In re Terkeltoub, supra.* The fact that the communications were not made in the context of preparing for an impending trial does not alter our result. *In re Grand Jury Investigation, Sturgis,* 412 F.Supp. 943 (E.D.Pa.1976). In *Sturgis,* materials prepared after the issuance of a subpoena were held to be privileged, since the threat of litigation was at that point sufficiently real and imminent to invoke the privilege.[10] *Id.,* at 948–949. We agree with the rationale in *Sturgis* that the

receipt by the clients of subpoenas duces tecum provided a real and imminent threat of litigation, and that Lawyer's subsequent investigation was performed in an effort to provide his clients the best possible representation before the grand jury, and, potentially, at trial.

We therefore grant Lawyer's motion, and quash the subpoena in its entirety.[11]

SO ORDERED.

---

**9.** The harm to Lawyer, on the other hand, is easily ascertainable. His relationship with his clients and his ability to prepare a defense, if one is required, would be severely hampered if he could be compelled to testify to communications with his clients and with others with knowledge of relevant facts.

**10.** The Eighth Circuit Court of Appeals, in a scholarly exposition of the historical origins of the work product doctrine, has held that the

doctrine is applicable to grand jury proceedings. *In re Grand Jury Proceedings, Duffy,* 473 F.2d 840, 842 (8th Cir. 1973).

**11.** In light of our decision, we deny Lawyer's request, received by letter of October 7, 1977, for transcripts of his clients' grand jury testimony and for the *in camera* affidavit submitted by the Government.