**HILL TOWER, INC., and John L. Ross, Plaintiffs,**

v.

**DEPARTMENT OF NAVY, Defendant.**

Civ. A. No. 3–88–0348–T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 11, 1988.

Charles L. Babcock, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Hill Tower, Inc.

John L. Ross, Kim M. Olson, Thompson, Coe, Cousins & Irons, Dallas, Tex., pro se.

Linda C. Groves, Asst. U.S. Atty., Dallas, Tex., for defendant; Lieutenant Dennis J. Argall, JAGC USNR, Dept. of Navy, Office of the Judge Advocate General (General Litigation), Alexandria, Va., of counsel.

## ORDER GRANTING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

On March 21, 1988, Defendant filed its Motion for Summary Judgment. Plaintiffs filed a Cross–Motion for Partial Summary Judgment on May 9, 1988. Defendant filed

its response on May 31, 1988, and on June 28, 1988, Plaintiffs filed their reply.

This action arises under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiffs filed separate requests for information pursuant to the FOIA seeking information regarding the crash of a F–4 fighter aircraft near Cedar Hill, Texas, on January 14, 1987. Defendant complied in part with the requests but refused to release portions of its records, including the JAG Manual Investigation, claiming the work-product exception pursuant to 5 U.S.C. § 552(b)(5). Plaintiffs seek review of Defendant's decision.

## BACKGROUND

On January 14, 1987, a Marine F–4 aircraft stationed at the Dallas Naval Air Station crashed near Cedar Hill, Texas. The aircraft did substantial damage to a transmission tower antenna owned by Plaintiff Hill Tower, Inc. As a result, on April 20, 1987, Hill Tower filed a FOIA request with Defendant seeking a copy of the investigative report compiled in accordance with the Judge Advocate General's Manual and any other written report concerning the crash of January 14, 1987. Plaintiff Ross made his request under the FOIA with Defendant on April 27, 1987. Ross specifically sought copies of both Aircraft Mishap Investigation Reports (MIR's) and Aircraft Accident Investigations (JAG Manual Investigations) in seven separate crashes from June 22, 1977 through the crash of January 14, 1987.

On August 21, 1987, Defendant released to Plaintiff Ross copies of the JAG Manual reports of the other six requested F–4 aircraft accidents. Defendant withheld the social security numbers and home addresses of individuals listed in the reports claiming that the release of such information would be an unwarranted invasion of their personal privacy under § 552(b)(6). Defendant did not release the requested MIR's for any of the seven accidents. Plaintiffs seek the release of these reports or alternatively request Defendant to file a *Vaughn* index with respect to all withheld documents.

On November 18, 1987, Defendant denied the request of both Plaintiffs for copies of the JAG Manual report of the January 14, 1987 crash, although it did grant Ross's request in part, providing him with copies of the JAG Manual reports of the other six requested accidents. Plaintiff Ross filed an appeal on December 17, 1987, with the Office of the Judge Advocate General, Department of the Navy, and Plaintiff Hill Tower filed its appeal on December 24, 1987. Both of these appeals were denied on January 21, 1988. However, because the same officer denied both the original requests and the appeals, another officer reviewed Plaintiffs' appeals. Plaintiffs' appeals were denied a second time on February 1, 1988. The decision of the Defendant being final and their administrative remedy exhausted, Plaintiffs filed this action on February 19, 1988.

Defendant asserts that the JAG Manual report prepared on the crash of January 14, 1987, is protected pursuant to the attorney work-product exemption provided under § 552(b)(5). Defendant further asserts that certain personal information concerning those involved with the crash are protected pursuant to § 552(b)(6). Plaintiffs do not seek this personal information. With respect to the MIR's of the other six crashes, Defendant informed the Court that as of August 5, 1988, it was attempting to comply with Plaintiff Ross's request. Defendant agreed to either provide the requested information or to file a *Vaughn* index for review by this Court.

## FREEDOM OF INFORMATION ACT

As a general rule the Freedom of Information Act seeks to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language. *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973); *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). Virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions. *United*

*States v. Weber Aircraft Corp.*, 465 U.S. 792, 793, 104 S.Ct. 1488, 1489, 79 L.Ed.2d 814 (1984); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975). The statute puts the burden on the government agency to prove that an exemption is available. *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977). Furthermore, all exemptions are to be narrowly construed. *Weber Aircraft*, 465 U.S. at 802, 104 S.Ct. at 1494; *Martin v. Office of Special Counsel, MSPB*, 819 F.2d 1181, 1185 (D.C.Cir.1987).

Exemption 5 of the FOIA, § 552(b)(5), provides for the withholding of information on matters that are inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. This exemption has been found to extend to both the "executive privilege," protecting the decision making process of governmental agencies, and the attorney-client and attorney work-product privileges embodied in the common law. *Sears*, 421 U.S. at 149–150, 95 S.Ct. at 1515–1516; *Kent* 530 F.2d at 618.

## NAVAL REPORTS

In order to determine if the work-product doctrine should apply, it is critical to understand the function of the documents in question. *Sears*, 421 U.S. at 138, 95 S.Ct. at 1510; *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir.1987); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 858 (D.C.Cir.1980). There are two documents pertaining to the crash of January 14, 1987, which have been withheld by Defendant; the MIR and the JAG Manual report. Whenever an aircraft crashes, Defendant conducts two separate categories of investigations, each with different procedures and different aims. The different types of reports were explained by the Fifth Circuit in *Cooper v. Department of Navy of United States*, 558 F.2d 274 (5th Cir.1977).

The primary investigation is known as the Judge Advocate General's Manual Investigation and has as its purpose the fac-tual documentation of all matters pertaining to the accident which may serve as a basis for legal or administrative action. It is primarily concerned with assessing property damage, unearthing possible negligence, neglect of duty, *et cetera*. It is independent of any other investigation performed. This is an investigation in which the investigating officer may take sworn testimony and is required to advise witnesses of their rights against self-incrimination. Punitive actions may be taken against military personnel as a result of this report.

The second investigation is the Aircraft Mishap Investigation Report (MIR), formerly known as the Aircraft Accident Safety Inspection. This investigation specifies that witnesses are not to be sworn and witnesses are assured that their testimony will not be used in either legal or punitive proceedings. The report is obtained in an effort to improve the safety of both the aircraft and its flight procedures. The anonymity of the report is required to produce frank discussions including personal opinions and speculation which aid in the prevention of future problems.

In *Cooper*, the Fifth Circuit found that the MIR report was exempted under FOIA under the executive privilege. However, the Court stated that the JAG Manual report was normally subject to disclosure, *in toto*. The Court found the report to be fact-oriented and that any opinions expressed would only be incidental to that purpose. *Id.* at 279.

Plaintiffs assert that *Cooper* is dispositive of this case and mandates the disclosure of the JAG Manual report. This Court does not agree that *Cooper* extends that far. First, the Fifth Circuit held that the Navy could withhold portions of the report, subject to proper administrative review. Second, the Navy claimed exemption of the JAG Manual based upon executive privilege, not as attorney work-product. However, for the reasons set forth below, the Court finds that Defendant is not entitled to claim the work-product privilege and, therefore, the JAG Manual report contains information which should be released.

The seminal case dealing with the attorney work-product doctrine is *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court found the work of preparing for trial demands insulation from opposing counsel's inquiries on a lawyer's research, analysis, legal theories, and mental impressions. The invasion of a lawyer's private thoughts would demoralize the profession.

■ However, the work-product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work-product doctrine focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from the work-product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation. *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984).

■ The test for the work-product privilege is whether the documents were prepared "in contemplation of litigation." *Sears*, 421 U.S. at 154, 95 S.Ct. at 1518. The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation *when* this document was drafted. *Senate of Puerto Rico v. U.S. Dept. of Justice*, 823 F.2d 574, 586 (D.C.Cir.1987); *Coastal States*, 617 F.2d at 865.

■ The JAG Manual has several different purposes. While it is unquestionably used for legal matters by the Judge Advocate, it is also prepared for other considerations. *See, Cooper.* Pursuant to Naval regulations, the JAG Manual report originates with an appointing order issued by the commanding officer of the Aircraft Group in which the aircraft involved was a part.

In this case, an appointing order was issued on January 15, 1987. Colonel P.J. Jones directed Colonel Delbert M. Bassett to conduct an investigation pursuant to the JAG Manual. The appointing order specifically directed Bassett to report findings, opinions and recommendations with respect to the cause of the accident, any resulting damage, injuries to naval personnel, line of duty misconduct if any, and responsibility for the accident including any recommendations for administrative or disciplinary action.

In the appointing order Jones also directed Bassett's attention to paragraph 0602 of the Manual, among other provisions. The Court finds this paragraph to be dispositive of this case. Its pertinent provisions state:

b. *Contents.* In every case the appointing order should direct the fact-finding body to report findings of fact. When opinions and/or recommendations are desired the appointing order should expressly direct their submission. In any case of doubt or ambiguity as to the scope of the investigation desired, the appointing order should recite the specific purpose of the investigation and provide explicit instructions as to the scope of the inquiry.... If the informal investigation is convened primarily for the purpose of gathering information necessary for the adjudication of an administrative claim against the United States under the Federal Tort Claims Act, or for the defense of a legal action against the United States, the appointing order should contain the following language: "This investigation is being convened because of anticipated litigation and for the purpose of assisting attorneys representing the interests of the United States in this matter."

Defendant claims that it is entitled to the work-product privilege because this report was produced in anticipation of litigation. Defendant claims that because of the serious nature of the damage done to Plaintiff Hill Tower's antenna that the likelihood of litigation was very high. In support of its position Defendant attached the affidavit of Bassett. He stated that throughout the preparation of his report he knew that because of the serious nature of the damage to Hill Tower that litigation was going to result. In preparing his report Basset had talked not only with Hill Tower but also their attorneys concerning the extensive

damage caused to the antenna. Bassett knew that the damages were in the millions of dollars and Hill Tower informed him that they anticipated making a claim against Defendant.

Despite Defendant's attempt to convert this JAG Manual report into work-product, the Court finds that the report was not created in anticipation of litigation and, therefore, is not exempt for disclosure under the FOIA. Since the exemptions to the FOIA are permissive rather than mandatory, an agency may impose upon itself more liberal disclosure rules than that required by the FOIA. *Mead Data,* 566 F.2d at 258. Furthermore, an agency must follow its own internal rules. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974).

Paragraph 0602 of the Manual of the Judge Advocate General expressly provides that if the purpose of the report is to gather information for litigation, then the appointing order should contain the language provided. The Court notes that the language concerning anticipated litigation is the only language in the paragraph set out in quotations. The Court finds, therefore, that merely referencing the section as Jones did in the appointing order was insufficient. For the JAG Manual report to come within the attorney work-product privilege, the appointing order should have contained the express language provided in paragraph 0602.

The Court realizes the difficulty that Defendant would have in making a immediate determination in the appointing order as to whether the report should be classified as done in anticipation of litigation. Therefore, the Court notes that paragraph 0608 of the Manual provides an opportunity for the investigating officer to state in his report that it was conducted in contemplation of litigation. The pertinent portions of paragraph 0608 provide:

b. *Preliminary Statement.* The purpose of the preliminary statement is to inform the convening authorities that the requirements as to procurement of all reasonably available evidence and the directives concerning the convening authority have been met.... If the informal investigation was convened primarily for the purpose of gathering information necessary for the adjudication of an administrative claim against the United States under the Federal Torts Claim Act or for the defense of a legal action against the United States, the preliminary statement should contain the following language: "This investigation has been conducted and this report is being prepared in contemplation of litigation and for the express purpose of assisting attorneys representing the interests of the United States in this matter."

The Court finds that if the investigating officer, Bassett, found his report was to be used primarily for litigation purposes, then he could have included the language found in 0608 in his report. Again, the Court finds it important to note that the above quoted language is the only language in paragraph 0608 that is found in quotations.

Therefore, because the Court finds that the JAG Manual report on the crash of the Marine F–4 aircraft of January 14, 1987, to be a document created in the normal routine of Defendant, that it was created for several purposes, not just litigation, and that Defendant did not follow its own procedure to protect the document as work-product, the Court is of the opinion that Plaintiffs' cross-motion for summary judgment should be granted.

The Court's interpretation of the regulations is designed to prevent the parties from claiming after the report has been submitted that it was written in anticipation of litigation, as is being done in this case. As the work-product privilege only applies to documents prepared in anticipation of litigation, the Defendant should either make clear its intention with respect to the report at the outset, or the investigating officer should state his intent with respect to the report. This would alleviate the burden on the court of having to decide months or years after a report was completed whether it was written in anticipation of litigation.

**568**

The Court issued a stay in this case on June 30, 1988, to allow Defendant an opportunity to either provide Plaintiff Ross with the requested MIR's for the other six incidents or to provide him with a *Vaughn* index. Before a final judgment can be rendered in this case, it is necessary for the Court to know the status of these reports. Therefore, the parties will provide this Court within twenty-one (21) days of the file date of this order, a joint status report informing the Court of the status of Plaintiffs' FOIA request for the MIR's of the other six incidents and for the crash of January 14, 1987 crash. The status report is to be initiated by counsel for Plaintiffs and all counsel are required to participate.

It is therefore ORDERED that Defendant's motion for summary judgment is denied and Plaintiffs' cross-motion for summary judgment is granted.

It is FURTHER ORDERED that the parties provide this Court with a status report as detailed above.