Leonard G. **GUZZINO**, et al.

v.

**J**ody M. **FELTERMAN**, et al.

No. 95–1190.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 20, 1997.

John T. Nesser, III, Elizabeth A. Meek, and Robert J. Burvant, for Patterson State Bank and Peter J. Lipari.

Cliffe E. Laborde, III, Robert E. Torian, and Patricia A. Bollman, for Dean Witter Reynolds, Inc.

## DISCOVERY RULING

TYNES, United States Magistrate Judge.

Now before the Court is Patterson State Bank ("PSB") and Peter J. Lipari's ("Lipari") Motion to Compel filed May 19, 1997 (Document No. 390). PSB and Lipari seek an order directing defendant, Dean Witter Reynolds, Inc. ("Dean Witter"), to produce documents created in connection with an investigation conducted by Dean Witter's Internal Audit Department and Active Assets Account Department in the spring of 1994. Dean Witter objects to production of the documents on grounds of the attorney-client privilege and the work product doctrine. Dean Witter has produced a privilege log of those documents which have been withheld on grounds of the attorney-client privilege and work product doctrine as required by F.R.Civ.P. 26(b)(5).[1] PSB and Lipari advise in their memorandum that the documents at issue here are listed in the privilege log commencing at the bottom of the second page of the privilege log and continuing through the middle of the last page of the log.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

Review of the briefs filed in connection with the pending motion reveals the following undisputed facts. This litigation involves allegations of a Ponzi scheme perpetrated by Jody Felterman, who was employed as an account executive at Dean Witter in Morgan City, Louisiana at all pertinent times. An internal investigation of Dean Witter's Morgan City office commenced in late February, 1994 following a telephone call to Dean Witter's Treasurer's Department in New York from First National Bank in St. Mary Parish ("FNB") advising of an overdraft in Dean Witter's depository account at FNB. As a result of that telephone call, an investigation, referred to as the "Morgan City Special Project", was commenced by Dean Witter. Dean Witter's Internal Audit Department investigated the banking irregularities, and its AAA department investigated Mr. and Mrs. Felterman's AAA account. Jody Felterman was terminated on June 24, 1994 by Dean Witter, the stated reason for termination being that he was kiting checks through his AAA account. Dean Witter states that it was not aware of Felterman's Ponzi scheme until after Felterman was terminated on June 24, 1994.

Dean Witter states explicitly in its Memorandum in Opposition that "[a]lthough FNB's telephone call in February, 1994 did not put Dean Witter on notice that Felterman was involved in a Ponzi scheme, it did provide enough concern to prompt the investigation of Dean Witter's Morgan City office by Dean Witter's law department and Internal Audit Department."[3]

### LAW AND ANALYSIS

#### Attorney–Client Privilege

▮ "The oldest of the privileges for confidential communications, the attorney-

---

1. Dean Witter's privilege log is attached to the Motion to Compel as Exhibit 4.

2. Counsel did not identify the disputed documents precisely. However, review of the privilege log and the briefs indicates that the disputed documents commence on page 2 of the privilege log with the entry dated March 1994, and con-

clude on the last page of the log with the fourth entry dated June 1994. This ruling does not address the entries in the privilege log prior to the entry dated March 1994 or subsequent to the fourth entry dated June 1994.

3. Dean Witter's Memorandum in Opposition, page 2, paragraph 1.

client privilege, protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communication from the lawyer to his client, at least, if they would tend to disclose the client's confidential communications. Its application is a question of fact to be determined in the light of the purpose of the privilege and guided by judicial precedents. **The burden of demonstrating the applicability of the privilege rests on the party who invokes it.**" (Emphasis added). (Case citations omitted). *Hodges, Grant & Kaufmann v. United States Government,* 768 F.2d 719, 720 (5th Cir. 1985); see also, *Wells v. Rushing,* 755 F.2d 376, 379, fn. 2 (5th Cir.1985). In addition, "[t]he privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.,* 682 F.2d 530, 538 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984).

What is "vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. El Paso Co.,* 682 F.2d at 538; *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 404 (M.D.La.1992). In *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), the United States Supreme Court recognized that the purpose of the privilege was "to encourage clients to make full disclosure to their attorney." The *Fisher* court further observed that "since the privilege has the effect of withholding relevant information from the fact finder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher, supra,* 425 U.S. at 402, 96 S.Ct. at 1577. Finally, in *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981), the Fifth Circuit observed that documents which are not otherwise protected by the attorney-client relationship are not immunized from discovery by mere delivery of the documents to the hands of an attorney.

Under the foregoing principles, Dean Witter has failed to carry the burden of proving that the withheld documents are protected by the attorney-client privilege. Review of the privilege log yields no evidence that a single one of the withheld documents was authored by an attorney, received by an attorney, or prepared for the purpose of obtaining legal advice from an attorney. While Dean Witter does aver in its memorandum that the investigation of Dean Witter's Morgan City office was conducted "by Dean Witter's law department and Internal Audit Department" [4], this averment is unsupported by either the privilege log or the affidavit of Mary Curran, Senior Vice President and Associate General Counsel of Dean Witter in 1994. The pertinent entries of the privilege log make no reference to Dean Witter's legal department whatsoever. Further, the affidavit of Mary Curran is vague and fails to describe what role, if any, Dean Witter's law department played in the investigation of Dean Witter's Morgan City office. At most, the affidavit establishes that the law department was kept advised of the progress and the results of the investigation. The Curran affidavit does not state that the investigation was commenced at the advice or request of the law department to gather information necessary to the rendering of legal advice to the corporation about the effects of the overdrawn Dean Witter depository account. Nor does the affidavit state that the law department had any supervision or oversight responsibilities for the investigation. Under such circumstances, the conclusory statement of Mary Curran that it was "always [her] intention that the 'Morgan City Special Project' was conducted pursuant to attorney-client privilege ..." [5] is of limited import. Privilege does not arise based on counsel's intentions alone.

Nor can Mary Curran's vague statement that the investigation was "performed by Dean Witter's Audit Department *in connection with communication with Dean Witter's*

---

4. Memorandum in Opposition to Motion to Compel, page 2, paragraph 1.

5. Mary Curran affidavit, Exhibit A to Motion to Compel.

*law department* "[6] be interpreted to establish a confidential communication between an attorney and a client for purposes of obtaining legal advice. Dean Witter has failed to present evidence of any direct communication between Mary Curran or any other member of Dean Witter's law department and the Internal Audit Department or of any direct communication between any member of the law department and the client Dean Witter, for the purposes of providing legal advice. The evidence presented to this Court establishes that Dean Witter's investigation was conducted in the ordinary course of its business, and that the Internal Audit Department merely advised the law department of its progress and results, presumably as a matter of policy or routine. Under the narrow standards outlined above, Dean Witter has failed to carry the burden of establishing that the attorney-client privilege protects the withheld documents.

Dean Witter's reliance on *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) is misplaced. The Supreme Court made clear in *Upjohn* that the attorney-client privilege applies to communications made by corporate employees concerning matters pertinent to their job tasks, regardless of echelon, if sought by the corporation's attorney in order to formulate and render legal advice to the corporation. *Id.* 449 U.S. at 386–98, 101 S.Ct. at 681–686. The situation presented here is not analogous to the situation in *Upjohn.* There, information was sought and obtained by house and outside counsel from numerous employees as part of an internal investigation of "possibly illegal" payments to foreign government officials. The employees' responses to written inquiries and interviews were held privileged by the Court because they were requested and tendered to enable counsel to give the corporation legal advice. *Id.* 449 U.S. at 391–93, 101 S.Ct. at 684. It is also significant that the *Upjohn* court restricted its holding to the facts of the case before it, and noted that "the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case ba-

sis." *Id.* 449 U.S. at 395, 101 S.Ct. at 685, citing S.Rep. No.93–1277, p. 13 (1974).

### Work–Product Doctrine

■ The party seeking the protection of the work-product privilege also has the burden of proving that the disputed documents are work product. *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling,* 120 F.R.D. 504, 509 (W.D.La.1988).

■ The work product doctrine, announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in F.R.Civ.P. 26(b)(3), protects documents and other tangible things *prepared in anticipation of litigation* by or for a party, or by or for a party's representative. The work product doctrine protects the integrity of the adversarial process by creating a zone of privacy and protection for the attorney's preparatory work on a case. See *Hickman,* 329 U.S. at 510–11, 67 S.Ct. at 393–94.

In *United States v. Davis,* 636 F.2d 1028, 1039 (1981), the Fifth Circuit set forth the standard in this circuit for determining whether a document has been prepared in anticipation of litigation, as follows:

"It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. *See Kent Corp. v. NLRB,* 5 Cir.1976, 530 F.2d 612, 623, *cert. denied,* 1976, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287; *In re Grand Jury Investigation (United States),* 3 Cir.1979, 599 F.2d 1224, 1229. **We conclude that litigation need not necessarily be imminent, as some courts have suggested,** *see, e.g., Home Insurance Co. v. Ballenger Corp.,* N.D.Ga.1977, 74 F.R.D. 93, 101; *In re Grand Jury Investigation (Joseph B. Sturgis),* E.D.Pa.1976, 412 F.Supp. 943, 948, **as long as the *primary motivating purpose behind the creation of the document was to aid in possible future litigation.*** *See Osterneck v. E.T. Barwick Industries, Inc.,* N.D.Ga.1979, 82 F.R.D. 81, 87, citing 8 C. Wright & A.

---

**6.** Mary Curran affidavit, Exhibit A to Motion to Compel, (underlining added for emphasis).

Miller, Federal Practice and Procedure sec. 2024, at 198 (1970)." (Emphasis added).

Dean Witter acknowledges within its Memorandum in Opposition that the notification by FNB "**certainly did not provide sufficient information to foresee the specifics of the suit which resulted,**" and further stated that the "**telephone call from FNB certainly provided Dean Witter with sufficient information to be concerned that irregularities in the depository account may result in some form of litigation, and more likely, investigations by regulatory agencies.**"[7] Dean Witter also acknowledges that it was not aware of Felterman's Ponzi scheme until after the pertinent investigation was concluded, and after Felterman was terminated on June 24, 1994.[8]

■ The evidence presented to this Court establishes that the investigation of the Morgan City Dean Witter office was commenced, at best, in anticipation of federal regulatory investigations. Thus, the issue arises whether anticipation of a federal regulatory investigation is the equivalent of anticipation of litigation for purposes of Rule 26(b)(3). Federal courts have concluded that once an investigation by a federal agency has commenced, that a corporation may reasonably be said to anticipate litigation. See, for example, *Koenig v. International Systems & Controls Corp.*, 693 F.2d 1235 (5th Cir.1982) (court held that documents in binders prepared by Arthur Young at the request of the corporation, ISC, were prepared in anticipation of litigation where binders were prepared after the SEC sent a letter to ISC requesting information). However, counsel have not cited, and this Court's research has not revealed any, cases which hold that documents prepared in anticipation of a federal

agency's investigation are protected by the work product doctrine.

■ The law is settled that "excluded from the work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982); *Hill Tower, Inc. v. Dept. of Navy*, 718 F.Supp. 562, 565 (N.D.Tex.1988) (report on crash of Marine aircraft was not created in anticipation of litigation).

The fact that the activities of Jody Felterman ultimately resulted in extensive investigation by the SEC and the NASD and the filing of over a hundred civil lawsuits in federal and state court does not cloak the documents created by Dean Witter's investigation of the Morgan City office with work product immunity because the evidence does not establish that the primary motivating purpose behind the investigation and the creation of the withheld documents was to aid in possible future litigation. Instead, the evidence presented by Dean Witter indicates that the investigation was conducted in the ordinary course of business and/or to prepare for potential investigations by the SEC and NASD.[9] This finding excludes the withheld documents from work product immunity.

Accordingly, Dean Witter has failed to carry the burden of establishing that the *primary motivating purpose* behind the investigation and creation of the withheld documents was to prepare for future litigation.

### Inadequacy of Privilege Log

PSB and Lipari further contend, and cite convincing evidence indicating, that the privilege log produced by Dean Witter does not reflect a complete list of all the documents which are responsive to the discovery propounded by PSB and Lipari regarding the

---

**7.** Dean Witter Memorandum in Opposition, page 6, paragraph 1.

**8.** This fact distinguishes this case from the *City of Worcester v. HCA Management Co.*, 839 F.Supp. 86 (D.Mass.1993) relied upon by Dean Witter. In *Worcester*, the accounting firm that sought to withhold an analytic memorandum knew when the memorandum was prepared that it had failed to detect significant duplicate Medicare payments to a hospital whose accounts it had audit-

ed. In this case, if Dean Witter had known of the Ponzi scheme when it commenced the investigation or even had discovered it during the investigation, the result reached here may be different.

**9.** Parenthetically, this Court suspects that Dean Witter was obligated under securities laws to conduct an investigation or audit of the overdraft in its depository account.

Morgan City investigation. Dean Witter shall conduct an exhaustive search for all additional responsive documents relating to its investigation of the Morgan City branch office between February and June 1994, and shall produce all additional responsive documents commensurate with production of the documents identified in the log.

### CONCLUSION

For the foregoing reasons, **PSB and Lipari's Motion to Compel is GRANTED. Dean Witter shall produce the withheld documents described hereinabove within twenty (20) days following receipt of this order.**