DIXIE MILL SUPPLY CO., INC.

v.

CONTINENTAL CASUALTY
COMPANY, et al.

No. 95–0110.

United States District Court,
E.D. Louisiana.

July 10, 1996.

Thomas J. Cortazzo, Lamothe & Hamilton; Bruce L. Feingerts, Gary Steven Brown, Feingerts & Kelly; Julianne Tyson Echols, Pulaski, Gieger & Laborde; and James Johnston Morse, Jr., James J. Morse, P.L.C., New Orleans, LA, for Dixie Mills Supply Co., Inc.

Raymon G. Jones, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Continental Casualty Company, Transcontinental Insurance Company and Valley Forge Insurance Company.

Jackson H. Ables, III, Daniel, Coker, Horton & Bell, P.A., Jackson, MS and Sidney Daniel Meeks, Reich, Meeks & Treadaway, Metairie, LA, for Employers Insurance of Wausau, Employers Mutual Liability Insurance Company of Wisconsin and Illinois Employers Insurance of Wausau.

Andrew Lane Plauche, Jr., Plauche, Maselli & Landry, New Orleans, LA, Mary E. McPherson, Sherrin Ross Ingram, David E. Trainor, and Darlene M. Oliver, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for American Motorists Insurance Company.

Elizabeth Sirgo, Chopin, Wagar, Cole, Richard, Reboul & Nutcher, L.L.P., Metairie, LA, for Sentry Insurance Company.

Bruce L. Feingerts and Gary Steven Brown, Feingerts & Kelly, New Orleans, LA, for Feingerts & Kelly, PLC.

Julianne Tyson Echols, Pulaski, Gieger & Laborde, New Orleans, LA, for Julianne Echols.

### ORDER AND REASONS

WILKINSON, United States Magistrate Judge.

In this diversity action, Dixie Mill Supply Co., Inc. ("Dixie Mill") sued its insurers, alleging that they violated the Louisiana Unfair Trade Practices Act ("LUTPA"), breached their duty of good faith and fair dealing to defend Dixie Mill in multitudinous asbestos-related, personal injury lawsuits and breached their respective insurance contracts with Dixie Mill. Plaintiff's motions to compel production of documents are pending against (1) Continental Casualty Company, Transcontinental Insurance Company and Valley Forge Insurance Company (collectively the "CNA defendants"), Record Doc. No. 75; and (2) Employers Insurance of Wausau ("Wausau"). Record Doc. No. 92. The CNA defendants filed an opposition memorandum. Record Doc. No. 87. Wausau did not file any opposition. The CNA defendants and Wausau have submitted to the Court for *in camera* review all documents withheld from production on the grounds of the attorney-client privilege, joint defense privilege or work product doctrine.

In its motions to compel, Dixie Mill primarily argues[1] that defendants have waived their attorney-client privilege and work product protection by placing at issue in this litigation defendants' states of mind when they committed the various acts alleged in the complaint, as amended. In support of its argument, Dixie Mill points out that defendants pled affirmatively that they acted in good faith and in conformance with their obligations under their respective insurance policies and with Louisiana law as applied to those policies. They also counterclaimed against Dixie Mill for its own alleged breach of contract and tortious interference with the insurers' contract with the independent counsel whom they hired to defend Dixie Mill in the underlying asbestos lawsuits.

■ Under Louisiana law, a party waives the attorney-client privilege[2] when he

---

1. Dixie Mill initially and correctly argues that defendants have the burden of establishing that the documents satisfy all elements of the attorney-client privilege or the work product doctrine. Because Dixie Mill has seen only a listing of the documents, and not the documents themselves, it is hard-pressed to argue any specific objections to defendants' assertion of these protections. I have carefully reviewed all of the documents and, with the exceptions noted at the end of this order, find that they meet all requirements of the attorney/client privilege (which includes a joint defense privilege for confidential communications between parties and their lawyers concerning a matter of common interest) and/or the work product doctrine.

2. Louisiana's Code of Evidence defines the attorney-client privilege as follows.

"pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Consequently, he places at issue and waives his privilege as to communications on the same subject under his control." *Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1145 (La.1987). The same waiver concept has been applied to the federal work product protection. *E.g., Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992).

Defendants oppose the motions to compel on the grounds that (1) all of the withheld documents are protected from discovery by the attorney-client privilege, the joint defense privilege or the work product doctrine;[3] (2) they have not placed any of these protected communications "at issue;" and (3) Dixie Mill has not submitted any proof that defendants will rely on any withheld document at trial to prove their affirmative defenses or counterclaims.

■ Dixie Mill contends that all "bad faith" insurance litigation necessarily requires investigation into the insurers' states of mind when they were deciding to what extent they were obligated to defend Dixie Mill in the asbestos litigation and how to undertake that defense. Thus, plaintiff argues, "at issue" waiver applies to all protected communications between the insurers and their coverage counsel. More particularly, Dixie Mill insists that defendants have affirmatively placed at issue their state of mind and their knowledge of Louisiana law, which must have come from their attorneys, by asserting that they acted in good faith in compliance with the insurance policies and their legal obligations.

Plaintiff's argument sweeps too broadly. Such a rule would permit a plaintiff to force a defendant to abrogate its privileges simply by asserting in the complaint that the defendant acted in bad faith, which the defendant then denies and says that, to the contrary, it acted in good faith. In any action based on breach of contract, breach of the duty of good faith and fair dealing or breach of the LUTPA, as in the current one, a defendant can be expected to deny the alleged breaches and assert that it actually acted in accordance with its contractual obligations and/or applicable law. Under plaintiff's argument, such a defense would be deemed to waive the attorney-client privilege as to defendant's knowledge or interpretation of the law in virtually every contract, bad faith, fraud or unfair trade practices case. This cannot be the correct result. "A litigant's pleading of a claim or defense to which his attorney-client communications are *relevant* does not by such pleading alone waive his attorney-client privilege." *Smith,* 513 So.2d at 1141 (emphasis added); *accord Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994) (citing traditional principles of attorney-client privilege and holding that attorney advice "is not in issue merely because it is relevant, and does not necessarily become an issue merely because the attorney's

---

A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, ... when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

(2) Between the lawyer and a representative of the lawyer.

(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest....

La.Code Evid. art. 506(B). A communication is "confidential" if it is not intended to be disclosed except "in furtherance of obtaining or rendering professional legal services for the client." *Id.* art. 506(A)(5).

3. The work product doctrine is governed by Fed. R.Civ.P. 26(b)(3).

a party may obtain discovery of documents and tangible things [within the scope of discovery] and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

advice might affect the client's state of mind in a relevant manner").

The attorney-client privilege is deserving of the utmost protection because it "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice." *Smith*, 513 So.2d at 1142. Although the privilege plainly obstructs the truth-seeking process, the legislature

> has decided that the detriment to justice from a power to shut off inquiry into pertinent facts in court will be outweighed by the benefits to the system of justice (not to the client) from a franker disclosure in the lawyer's office. Consequently, a waiver must be founded on an affirmative act by the privilege-holder that creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself.

*Id.* at 1143 (citations omitted).

In *Smith*, the Louisiana Supreme Court ratified the concept of "at issue" waiver be-

cause of the unfairness that would arise from permitting a client to insist on the privilege when he intends to use privileged information at trial. *See generally id.* at 1143–45. However, the Court rejected an overly broad formulation of "at issue" waiver, adopted by some courts, which premises waiver on the relevance of the privileged information to the privilege-holder's opponent and on the opponent's vital need for the material. *Id.* at 1145–46.[4] Waiver occurs only when the privilege-holder "will be *forced inevitably to draw upon a privileged communication* at trial in order to prevail." *Id.* at 1145 (emphasis added). The focus in the instant case, then, must be on *defendants'* intended use of the protected communications, *i.e.*, on "whether the privilege holder[s] ha[ve] committed [themselves] to a course of action that will require the disclosure of a privileged communication," *id.* at 1146,[5] not on Dixie Mill's alleged need for the materials to prove its own allegations of bad faith.[6]

The cases on which Dixie Mill relies are not persuasive, either because they apply to

---

4. Then–Justice, now–Fifth Circuit Court of Appeal Judge, Dennis wrote for the Louisiana Supreme Court that this rejected test

    improperly undermines the legislatively established attorney-client privilege by weighing the individual privilege-holder's interests against his opponent's need for evidence whenever the privilege is attacked. This ignores the general interest of the system of justice in maintaining the privilege and leads to automatic waiver even when there has been no misuse by the privilege-holder or unfairness to his opponent. In reality the . . . "test" is no test at all because the assertion of almost any claim or defense can be called an "affirmative act", and privileged material will usually be "relevant" and "vital" to the opposing party. . . . [Waiver of] the attorney-client privilege . . . should not depend on case-by-case balancing of harm to the [attorney-client] relationship against an opposing litigant's need for information. . . . A rule of privilege that turns on the opponent's need for information would subject the privilege to the hazards of fortune: the continued existence of one's privilege would depend not on how one has used or abused the privilege, but rather on who one's adversary happens to be.

    *Id.*

5. Defendants deny that they intend to rely on privileged communications at trial. The waiver clearly applies when a party asserts as a defense or element of its claim that it relied on the advice of counsel. 8 Charles A. Wright, Arthur R. Mil-

ler & Richard L. Marcus, *Federal Practice and Procedure* § 2016.2, at 253 (2d ed. 1994) (hereinafter Wright, Miller & Marcus); *McNeely v. Board of River Port Pilot Comm'rs*, 534 So.2d 1255, 1255–56 (La.1988). However, the parties in the instant case agree that defendants have not raised an advice of counsel defense.

6. Decisions that rest upon this theory have been extensively criticized.

    These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of the case. *Rhone–Poulenc Rorer, Inc.*, 32 F.3d at 864; *see also* Wright, Miller & Marcus, *supra*, at 253–54 ("[T]he courts have carried this waiver concept beyond the situation in which the privilege-holder raises certain legal or factual issues. These cases do not fit within any sensible concept of waiver, and might best be viewed as ad hoc adjustments by courts in the scope of privilege."); Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator*, 84 Mich.L.Rev. 1605, 1630 (1986) (These decisions

**558**

the attorney-client privilege the "relevance and need" test explicitly rejected by the Louisiana Supreme Court in *Smith*, because the privilege-holders in those cases raised an advice of counsel defense or because the party seeking discovery in those cases established the undue hardship and compelling need required to discover attorney work product under Rule 26(b)(3). For example, defendants' scienter was at issue in *In re Bairnco Corp. Secs. Litig.*, 148 F.R.D. 91, 99–100 (S.D.N.Y.1993), a securities fraud class action. The district court held that, although a defendant corporation purported not to raise an advice of counsel defense, the alleged material misrepresentations in its public disclosures were expressly based on "belief of counsel" and the corporation in its motion papers relied on conclusions of counsel. In addition to these express waivers of privilege, the court used the much-criticized "relevance and need" test to order disclosure of privileged communications: "Moreover, *irrespective of the legal defenses* that [defendant] expects to raise, the *plaintiffs' case will perforce place at issue* [defendant's] knowledge of its litigation condition. . . . The opinions rendered by [defendant's] counsel . . . are clearly relevant to the central issue of scienter." *Id.* at 100 (emphasis added).

Furthermore, the opinions in *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973), and *Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983) (interpreting Arizona's equivalent of Fed.R.Civ.P. 26(b)(3)), both cited by Dixie Mill, dealt with attorney work product with no discussion of attorney-client privi-

lege. The Arizona court in *Brown* focused not on what defendant must necessarily disclose to defend the case but on how the insurer's documents were essential to proof of plaintiff's claims. The court held that plaintiff had met the heightened showing required by Arizona Rule of Civil Procedure 26(b)(3) for revelation of an attorney's mental impressions. Similarly, in *Bird*, the district court found that the defendants' need for the plaintiffs' attorney work product was compelling when such information was the only way for defendants to prove their defense of laches based on their allegations that plaintiffs knew or should have known of their grounds for bringing the current suit long before the action was commenced. *Bird*, 61 F.R.D. at 46–47.[7]

■ More recent case law than that cited by Dixie Mill defeats its argument for a blanket waiver of privilege and work product protection in a bad faith insurance case. The mere fact that a claim of bad faith (or its affirmative defense of good faith) or other claim or defense based on a party's state of mind is involved does not waive the attorney-client privilege. *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 903 F.Supp. 1007, 1011 (E.D.La.1995). "Even where a party's state of knowledge is particularly at issue, such as in a case involving claims of laches or justifiable reliance, waiver of the privilege should not be implied because the relevant question is not what legal advice was given or what information was conveyed to counsel,

rob the privilege-holder of privilege protection as the price for raising a given legal issue even though he will not make affirmative use of privileged material. Thus, the courts emphasize what the privilege-holder has to prove, not how he is going to prove it. Ultimately this shift in focus perverts waiver because it rests on the unfairness of having a privilege, rather than the unfairness of the act relied upon, to show a waiver.");

*id.* at 1632–33 ("The waiver decisions abandon the underlying principle of fairness because they do not focus on unfairness resulting from the act giving rise to the waiver. . . . Instead, this waiver doctrine should be limited to cases in which the privilege-holder injects the privileged material itself into the case.").

**7.** The privilege-holder in *Bird* also raised an advice of counsel allegation, which justified the

finding that it had waived its work product protection. *Id.* at 47; *see also Holmgren*, 976 F.2d at 577 (allegations of insurer/defendant's bad faith in settlement of tort claim placed insurer's mental impressions and opinions at issue because insurer would have to call its adjusters to testify about opinions as to lack of viability of underlying claim, and plaintiff's need for documents was compelling because the information was not available elsewhere); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976) (defendants waived attorney-client privilege through their expressed intent to call their lawyers to testify that prior lawsuits were pursued on basis of legal advice and in good faith, and thus created compelling need for plaintiff to have access to attorneys' work product).

but what facts the party knew and when." *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *12 (S.D.N.Y. Sept. 16, 1994).

█ A simple assertion that an insured cannot otherwise prove her case of bad faith does not automatically permit an insured "to rummage through [the insurers'] claims file." *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653, 658 (M.D.N.C.1995). "While arguably it may be more difficult to prove a claim of bad faith failure to settle without examining an insurance company's claims file, that does not mean it is impossible." *Id.* The reasonableness of the insurers' actions in a bad faith case can be proved by objective facts, which are not shielded from discovery and do not *necessarily* require the introduction of privileged communications at trial. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir.1995). The facts, rather than the legal advice or opinions, underlying the insurers' decisions at issue in the instant litigation can be developed through depositions and other discovery of non-privileged information. *In re International Sys. & Controls Corp. Secs. Litig.*, 693 F.2d 1235, 1241 (5th Cir.1982); *Arkwright Mut. Ins. Co.*, 1994 WL 510043, at *12.

Like the Southern District of New York in *Arkwright* and the Fifth Circuit in *International Sys. & Controls,* I am unconvinced that the "at issue" doctrine justifies waiver of defendants' attorney-client privilege or work product protection in the present case.

> Regardless of whose burden it ultimately will be at trial to prove the good faith ... or the reasonableness [of defendants' actions], ... [Dixie Mill] has not shown that [defendants] intend to prove [their counterclaims or their good faith] through disclosure of the contested documents. Although the protected communications here may well contain some factual information that would be useful to [Dixie Mill, it] has not shown that such information is not available through depositions and interrogatories.

**8.** On their privilege log, the CNA defendants do not argue that this document is privileged; they assert that it is irrelevant. I am not currently ruling on any relevance objection.

*Arkwright Mut. Ins. Co.*, 1994 WL 510043, at *13. Moreover, Dixie Mill has failed to make the heightened showing required by Rule 26(b)(3) to obtain attorney opinion work product, *i.e.,* that it has a *compelling* need for defendants' attorney work product. *Holmgren*, 976 F.2d at 577 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981)); *In re International Sys.*, 693 F.2d at 1240. Plaintiff's mere conclusory allegation that it needs the information to prove its case is not sufficient to overcome the high degree of protection afforded to an attorney's mental impressions, opinions and legal theories.

Accordingly, Dixie Mill's motions to compel are DENIED with the following exceptions. The motions are GRANTED as to the following documents, which I find are not covered by the attorney-client privilege, the joint defense privilege or the work product doctrine. Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not privileged simply because they are written by or to an attorney. La.Code Evid. art. 506(A)(5). Accordingly, defendants must produce the following documents to Dixie Mill within ten (10) days of entry of this order.

### CNA DOCUMENTS

| Doc. No. | Portion of document not privileged |
|---|---|
| 0002 | Entire letter |
| 0003 | Last page only (fax transmittal sheet) |
| 0006 | Cover letter only |
| 0007 | Cover letter only |
| 0009 | Entire letter |
| 0013 | Second page only (fax transmittal sheet) |
| 0014 | Entire document (two transmittal letters and fax transmittal sheet) |
| 0016 | Entire letter [8] |
| 0017 | Cover letter only |
| 0018 | Entire letter |
| 0019 | First attachment only (letter from Mr. Meeks to Mr. Feingerts) |
| 0020 | Cover letter and fax transmittal sheet only [9] |
| 0021 | Cover letter and fax transmittal sheet only |
| 0022 | Fax transmittal sheet only |
| 0026 | Cover letter only |
| 0028 | Three fax transmittal sheets |
| 0029 | Cover letter and two fax transmittal sheets |
| 0030 | Entire letter |

**9.** Although attorney invoices for legal services are ordinarily not privileged, in this case it ap-

## WAUSAU DOCUMENTS

The following Bates-numbered Wausau documents: Nos. 201000, 201001, 201021, 202000, 202006, 202008, 202042, 202052, 202056, 203008 and 208003. It is not clear to me whether Document No. 208004 (which is essentially a duplicate of No. 208002) is a draft or final version of a letter from Mr. Meeks to Mr. Feingerts. If it is a draft (as No. 208002 is), then it is protected attorney work product. If it is the final version that was sent to Mr. Feingerts, then it is not protected.

The following documents have no Bates numbers, but are listed numerically in Mr. Meeks' October 31, 1995 letter to Mr. Cortazzo describing certain withheld documents.

| Doc. No. | Portion of document not privileged |
| --- | --- |
| (2) | Fax transmittal sheets dated 12/22/94 (first and third pages of document) |
| (5) | Fax transmittal sheet dated 12/16/94 |
| (8) | Fax transmittal sheet dated 8/10/94 |

Among this group of unnumbered documents is an apparent final version of a letter from Mary Mueller to Mr. Feingerts dated August 12, 1994 and stamped "COPY." If this is a final version, it is not protected and should be produced.

I cannot locate among the documents submitted to me by Wausau the document numbered (7), described as an undated memorandum prepared by Ms. Mueller regarding a telephone conversation with Mr. Meeks. If Wausau intends to claim a privilege as to that document, it should be submitted to me for *in camera* review within five (5) business days of entry of this order.

pears that Dixie Mill is looking for the legal issues researched by the CNA defendants' attorneys, which are detailed on the invoices. When attorney fee information may reveal confidential communications or protected opinion work product, it need not be disclosed. *See In re* *Grand Jury Subpoena,* 926 F.2d 1423, 1430–31 (5th Cir.1991) (attorney-client privilege protects fee information when intertwined inextricably with confidential communications); *Ring,* 159 F.R.D. at 659–60 (invoices that contain opinion work product are protected).