**CONOCO INC.**

v.

**BOH BROTHERS CONSTRUCTION CO., et al.**

No. 97–1378.

United States District Court, W.D. Louisiana, Lake Charles Division.

July 10, 1998.

---

Gregory Wayne Belfour, Jones Tete et al., Lake Charles, LA, John A. Jeansonne, Jr., George A. Veazey, Jeansonne & Remondet, Lafayette, LA, for Conoco, Inc.

Alfred J. Rufty, III, Harris & Rufty, New Orleans, LA, MacHale A. Miller, Iliaura Hands, Miller & Co., New Orleans, LA, for Boh Brothers Construction Co.

Michael W. Adley, W. Scott Judice, Judice & Adley, Lafayette, LA, for National Union Fire Insurance.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court is an appeal [Doc. 86] of the Magistrate Judge's Ruling dated May 19, 1998, in which he granted in part and denied in part a Motion for a Protective Order by the plaintiff, Conoco. An Opposition Brief was filed by Boh [Doc. 101], as was a Reply Memorandum by Conoco.

Conoco has brought this action against Boh Brothers and National Union seeking contractual indemnification from Boh and defense costs and insurance coverage from National Union. In order to challenge the reasonableness of Conoco's settlement with Cauthron and Mizell, Boh issued a 30(b)(6) deposition notice and request for production of documents which centered around communications between Conoco's attorneys to Conoco regarding their assessments of the case brought by the plaintiffs. In response to the discovery requests, Conoco objected on the basis of attorney/client privilege and sought a protective order from the court. Magistrate Judge Wilson found that Conoco had waived its attorney/client privilege by making the "reasonableness" of the settlements an issue in this matter.

Conoco is objecting to the Magistrate Judge's determination that "Conoco will inevitably be forced to draw upon privileged communications to prove that it is entitled to indemnity and that the settlement was reasonable." (Memorandum Ruling 5/19/98, p. 13). Conoco argues that, in spite of its stipulation to the contrary, the Magistrate Judge's finding that Conoco will inevitably be forced to draw upon privileged communications is an abuse of discretion. Conoco states that it is "quite confident" that it will be able to support its claims of reasonableness without relying upon those privileged communications and that it is not within the province of the court to determine beforehand what evidence the parties intend to utilize in satisfying the burden of proof. Therefore, Conoco argues that there was no anticipatory waiver of attorney/client privilege.

Conoco also argues that Louisiana law grants an absolute privilege on opinion work product. Magistrate Judge Wilson found that, based upon Federal Rule 26(b)(3) regarding work product, there is an exception in cases where the need for the material is "compelling." The Magistrate Judge held that the need for this information was compelling and therefore Conoco's privilege has been waived. Conoco argues that this finding contradicts F.R.E. 501 which states that privilege will be determined according to state law. LSA C.C.P. Art. 1424, which controls work product privilege, contains no exceptions under Louisiana law.

Conoco argues that Conoco's attempt to obtain indemnity from Boh is governed by the rule in *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973), which requires Conoco, in order to obtain indemnity, to establish potential liability to the plaintiffs and the reasonableness of the settlement. Boh takes the position that the case at bar differs from *Parfait* in that Boh's indemnity obligation is limited and does not include indemnification for gross negligence. Consequently, by a logical extension of the *Parfait* principal, Conoco must prove not only "potential liability" for a finding of simple negli-

gence, but also "no potential liability" for gross negligence and punitive damages. Boh questions whether Conoco reasonably concluded that it ran a substantial risk of losing the amount paid in settlement to the Cauthrons and Mizells based solely upon simple negligence and no risk of punitive damages for gross negligence. Boh argues that Conoco, by seeking indemnification under this restrictive indemnity agreement, has made its mental impressions and evaluations about the potential for finding gross negligence and a punitive damage award a focus of this litigation.

■ The Louisiana Supreme Court in *Succession of Smith v. Kavanaugh, Pierson and Talley*, 513 So.2d 1138 (La.1987), provided some exceptions to attorney-client privilege, one being when a party places privileged communications at issue. In appealing the Magistrate Judge's ruling, Conoco contends that the Magistrate Judge failed to correctly apply the *Smith* rule, contending that the Louisiana Supreme Court had substituted an "anticipatory waiver" theory for the "placing-at-issue waiver" rule. Conoco reasons that under this anticipatory waiver theory, a party waives the attorney-client privilege only if that party has asserted a claim requiring it to produce privileged communication at trial, thereby opening the door for all other privileged communications related to that subject. Conoco then stipulated that it would not use any of its attorney's letter at trial in an attempt to satisfy the *Smith* criteria for preventing an anticipatory waiver.[1]

Under Louisiana law, a party waives the attorney-client privilege when he "pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication in order to prevail. Conse-

quently, he places at issue and waives privilege as to communications on the same subject under his control."[2] The same waiver concept has been applied to the federal work product protection.[3] The Louisiana Supreme Court in *Succession of Smith*, supra, discussed three situations which would cause unfairness from an abuse of privilege: (1) partial disclosure of privileged communication at trial; (2) pre-trial partial disclosure; and (3) placing privileged communication at issue.

Conoco argues that, since they have stipulated that they will not introduce the materials at trial, there is no "anticipatory waiver."[4] While this is true with regard to pre-trial disclosure under *Succession of Smith*, the "placing-at-issue" waiver is entirely different from pre-trial disclosure and such a stipulation would not preclude a finding of a "placing-at-issue" waiver by the court.

The placing-at-issue waiver, which the Magistrate Judge found at issue in the case at bar, occurs when the privilege holder pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. As a result, the privilege is waived as to all communications on that subject. *Id.* The waiver does not depend solely on the relevance of the privileged material, or on the adversary's need, no matter how strong, for the communication. The focus is on the privilege holder, and the sole concern is whether the privilege holder has "committed himself to a course of action that will require the disclosure of a privileged communication." *Id.* at 1146.

In this case, Conoco has brought this action against Boh seeking to recover under a

---

1. Conoco also cites *Swidler & Berlin v. United States*, 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) in support of its position. The Court in *Swidler* states that the attorney-client privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in observance of law and the administration of justice. While this statement is true, the remainder of the holding and the reasoning of *Swidler* deals exclusively with a posthumous application of attorney-client privilege and this is not applicable to the case at bar.

2. *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1145 (La.1987); *Henricks v. Stumpf*, 613 So.2d 683, 685 (La.App. 5 Cir.1993); *Merhige v. Gubbles*, 95–1106 (La.App. 4 Cir. 6/29/95), 657 So.2d 1098, 1101; *Dixie Mill Supply Co. Inc. v. Continental Casualty Company*, 168 F.R.D. 554, 556 (E.D.La.1996).

3. E.g., *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992).

4. *Merhige, Id.* at 1101.

contractual indemnity agreement. In order to recover on the indemnity claim, Conoco must establish that an indemnitee-indemnitor relationship exists and that the "indemnitee acted in accordance with equitable indemnity principles in making the settlement," i.e., that the settlement was reasonable. *Parfait v. Jahncke Service, Inc.,* 484 F.2d 296, 301 (5th Cir.1973).

After reviewing the law and the arguments of the parties, this court finds that the mental impressions and analysis by Conoco's attorneys regarding the basis of Conoco's liability and the reasonableness of the amount paid in settlement are at issue in this litigation. By seeking indemnity, Conoco has placed at issue the basis for its liability, its liability analysis and the reasonableness of the settlement paid. This court agrees with the Magistrate Judge that Boh has shown a compelling need and no alternative means of obtaining this information and that Conoco has waived its immunity under the work-product doctrine.

Accordingly, for the reasons set forth in the Magistrate Judge's Memorandum Ruling and in this document, Conoco's objections to the Magistrate Judge's ruling will be overruled.

### MEMORANDUM RULING

WILSON, United States Magistrate Judge.

Currently before the court is "Motion for Protective Order" [doc. 52] filed on behalf of Conoco, Inc. (Conoco). Conoco filed this motion in response to discovery requests[1] made by Boh Brothers Construction Company (Boh). By this motion, Conoco seeks to have the court issue a protective order providing that certain documents and information need not be turned over to Boh.

The lawsuit between Conoco and Boh arises out of a claim for indemnification filed by Conoco against Boh. When Boh became a subcontractor on a Conoco project in 1994, Boh entered into a contract whereby Boh agreed to indemnify Conoco for certain losses and damages to Boh's employees unless such liability arose out of Conoco's willful misconduct or gross negligence. *See* Conoco's Exhibit 1, art. 9.

While working on Conoco's pipeline, two of Boh's employees, Mr. Cauthron and Mr. Mizell, inhaled Ethylene Dichloride (EDC). They then sued Conoco and Vista Chemical Company (Vista).

On January 30, 1997, Conoco made a demand upon Boh for indemnification and defense of the lawsuits filed by Mr. Cauthron and Mr. Mizell. *See* Conoco's Exhibit 2. In response to this demand, Boh acknowledged its obligation to indemnify Conoco for injuries to Mr. Cauthron and Mr. Mizell unless such injuries arose out of willful misconduct or gross negligence on the part of Conoco. Consequently, Boh would not agree to defend and indemnify Conoco until it was first determined whether any of Conoco's liability to Mr. Cauthron and Mr. Mizell was the result of intentional acts and/or gross negligence.

Shortly prior to the trials in the Cauthron and Mizell matters, Conoco settled with both of these parties, paying Mr. Cauthron $1,750,000 and Mr. Mizell $875,000. Conoco then instituted this lawsuit against Boh and its insurer, National Union, to recover defense costs along with indemnification for the amounts expended to settle the lawsuits.

In preparation of its defense of Conoco's claim for indemnification, Boh issued a 30(b)(6) Deposition Notice and a Second Request for Production of Documents to Conoco. These discovery requests seek discovery, in part, on the issue of Conoco's liability analysis in the Cauthron and Mizell lawsuits along with all recommendations and evaluations which led up to Conoco's settlement in those matters. Additionally, Boh seeks discovery on the issues regarding amounts paid by Conoco for the EDC cleanup, anticipated future costs of cleanup, and details of the alleged damage to the Chicot Aquifer caused by the EDC leak.

Conoco filed this motion for protective order in response to certain discovery requests it finds objectionable. Specifically, Conoco

---

1. Specifically, Conoco objects to Items 10, 11, 12, 14, 15, 16, 17, and 18 in Boh's 30(b)(6) Deposition Notice and Items 1–4 in Boh's Second Request for Production of Documents.

objects to the following discovery requests in the Rule 30(b)(6) Deposition Notice:

## 10.

Full details of all facts and other considerations upon which you base your beliefs that you had potential liability to the Cauthrons and the Mizells as well as a detailed account of each and every factual and evidentiary consideration upon which you based any such belief that you had potential liability including, without limitations, the nature of their alleged injuries and the cause of them.

## 11.

All factual and evidentiary considerations that led you to pay the Mizells and the Cauthrons the sums that were paid in settlement, including, without limitation, the nature and extent of the injuries of which Mr. Cauthron and Mr. Mizell complained, the symptomatology the experienced, the diagnoses of there maladies rendered by Conoco's doctors, Cauthron's doctors, and Mizell's doctors, the nature and extent of any disability that each of those injured workers professed to have, your experts' (including doctors') evaluations of those disabilities, the components or elements of damages that you considered the Cauthrons and the Mizells potentially could recover and the monetary amount of any judgment that you thought they potentially might obtain for each of those components or elements of damage.

## 12.

All factual and evidentiary considerations upon which you base the statement in the settlement documents that the amounts paid represent a reasonable assessment of the compensatory damages that plaintiffs might have obtained had the case gone to trial.

## 14.

The amount of money Conoco has expended in cleaning up the EDC spill and in taking remediation measures.

## 15.

All remediation measures that Conoco anticipates taking in the future.

## 16.

Whether EDC has been found in the Chicot Aquifer beneath Conoco's property, and if so, full details thereof.

## 17.

Identification by author and date of all medical records, doctor reports and expert reports upon which you have relied in evaluating the claims asserted by the Cauthrons and the Mizells.

## 18.

Identification of the author, addressee and date of, as well as the contents of, all documents containing any evaluation of Conoco's liability (actual or potential) to the Cauthron's and/or Mizells and/or any evaluation of the damages (compensatory and/or punitive and/or exemplary) that the Cauthrons and/or the Mizells could recover.

Conoco objects to the following requests in the Second Request for Production of Documents:

## 1.

All reports, memoranda, letters and other writings and communications evaluating the injuries and claims of the Cauthrons and the Mizells both as to merits of those claims and the quantum thereof.

## 2.

All reports, memoranda, letters and other writings and communications upon which each and every representative of Conoco, who participated in the decision to settle with the Cauthrons and the Mizells, relied in reaching that decision.

## 3.

All reports, memoranda, letters and other writings and communications from Marina Pita to representatives of Conoco and/or to outside counsel providing any analysis or evaluation of any aspect of the

claims asserted by the Cauthrons and/or the Mizells and/or considering the liability and the potential liability aspects of the case and/or considering the allegations of gross negligence.

### 4.

All reports, memoranda, letters and other writings and communications from outside counsel to Marina Pita or other representatives of Conoco providing any analysis or evaluation of any aspect of the claims asserted by the Cauthrons and/or the Mizells and/or considering the liability and the potential liability aspects of the case and/or considering the allegations of gross negligence.

In support of its objections, Conoco claims that the documents sought by Boh are protected from discovery by the attorney-client privilege and/or work product doctrine. As an additional basis for objecting to the discovery sought by Boh, Conoco also claims that the testimony and documents which are sought by Boh are not relevant or reasonably calculated to lead to the discovery of relevant evidence because the reasonableness of Conoco's settlement with the Cauthrons and the Mizells is not an issue in this case and because Conoco is not seeking indemnification for the costs of cleanup or remediation of the EDC spill site. Alternatively, Conoco requests that discovery of this information, if allowed by the court, be made only under the strictest of confidentiality orders. Boh has no objection to a Confidentiality Agreement but claims that it is entitled to this information through the discovery process without such an agreement.

### LAW AND ANALYSIS

The information sought by Boh can be divided into two distinct groups for purposes of this motion: (1) information related to the cleanup costs and extent of the EDC spill; and (2) information related to Conoco's liability analysis and settlement decision in the Cauthron and Mizell cases. The court will address Boh's discovery requests for each of these groups of information separately.

### I.  Clean-up Costs and Extent of Spill

■  Conoco objects to Items 14–16 in Boh's 30(b)(6) Deposition Notice which are related to the clean-up costs and whether EDC was found in the Chicot Aquifer beneath Conoco's property. Conoco objects to the discovery of this information on the grounds of relevancy. Conoco claims that this information is not relevant to this proceeding because Conoco is not seeking indemnification from Boh for the costs associated with cleaning up the EDC spill. Boh contends that this information is relevant to the issue of whether Conoco was grossly negligent in failing to repair the pipeline prior to the EDC leak and to Boh's fraud defense of Conoco's indemnity claim. Specifically, Boh argues that the answers to these discovery requests will show the breadth and severity of the EDC leak, the time the EDC leak began, and the time remediation efforts began.

Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery in pertinent part as follows:

**(b) Discovery Scope and Limits.**  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) **In General.**  Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. *The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence....* (Emphasis added.)

The court acknowledges that Boh is entitled to discovery that is relevant to its defense of Conoco's indemnity claim. However, considering the discovery requests as currently phrased in Items 14–16 of Boh's

30(b)(6) Deposition Notice, the court finds that the discovery requests are broader than the scope of discovery and are not reasonably calculated to lead to the discovery of relevant evidence. While the time frame and severity of the EDC leak within the relevant time frame may be relevant to Boh's defense, it is not readily apparent that the clean-up costs incurred by Conoco and Conoco's future remediation efforts are.

Accordingly, Conoco's motion for protective order is GRANTED with respect to Items 14–16 of the 30(b)(6) Deposition Notice. These items should be rephrased by Boh so that these requests are more limited and directed more towards the gathering of the information which is relevant.

## II. *Conoco's Liability Analysis and Settlement Decisions*

Conoco objects to Boh's discovery requests which are related to its liability analysis and settlement decisions in the Cauthron and Mizell cases. Conoco claims that this information is privileged and that it is not relevant to this proceeding because the reasonableness of the settlement is not an issue in this case. Boh argues that this information is relevant to its defense because it will provide information related to the reasonableness of the settlement and the basis for Conoco's liability. Specifically, Boh argues that it will not owe indemnity to Conoco if the settlement was unreasonable or if Conoco's liability arose even in part from gross negligence.

### A. *Relevancy of Information Sought*

■ The court will initially determine the relevancy of the information sought in discovery to this proceeding. Conoco contends that the reasonableness of the settlement is not an issue, thus any information pertaining to the reasonableness of the settlement is not relevant. In support of its position, Conoco cites *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973) which allegedly stands for the proposition that an indemnitee only needs to prove "potential liability" to the plaintiffs in the underlying claim in order to recover indemnification when the indemnitee tenders its defense to an indemnitor who declines the tender. Boh asserts that the

settlement must be reasonable or it does not owe indemnity as a matter of law. Boh distinguishes *Parfait* from the instant case on the basis of the facts in each case. Further, Boh argues that contrary to Conoco's argument, the holding in *Parfait* does not allow indemnity for unreasonable settlements.

■ This court's reading of *Parfait* leads it to find that a settlement must be reasonable before indemnity is owed. The court in *Parfait* expressly stated that the indemnitee bears the burden of showing that an indemnitee-indemnitor relationship exists and that the indemnitee "acted in accordance with equitable indemnity principles in making the settlement and had not spent its indemnitor's money too freely." *Parfait*, 484 F.2d at 301. The court also stated that the indemnitee has "the burden of showing that the settlement was reasonable in amount." *Parfait*, 484 F.2d at 305.

Additionally, in *Molett v. Penrod Drilling Company*, 826 F.2d 1419, 1429 (5th Cir.1987), the Fifth Circuit held that an indemnitee must show that a settlement was reasonable. The court then remanded the case to the district court for determination of whether the settlement was reasonable. Following remand, the Fifth Circuit engaged in a lengthy discussion about and review of a district court's finding that a settlement was reasonable. *Molett v. Penrod Drilling Company*, 919 F.2d 1000, 1004–09 (5th Cir.1990). In the later decision, the Fifth Circuit reiterated its holding that indemnity is only required when the settlement was reasonable. *Molett*, 919 F.2d at 1005.

Because the law in the Fifth Circuit is clear that a settlement must be reasonable before indemnity is owed, the court finds that discovery regarding the reasonableness of the settlement is relevant to these proceedings. In light of this finding, the court must now consider Conoco's claims that this information is subject to the attorney-client privilege and/or work product immunity.

### B. *Discovery Protections*

Conoco claims that the evaluations, liability assessments, and recommendations regard-

ing the defense of the Cauthron and Mizell cases "were written to or by Conoco and its attorneys to facilitate the rendition of professional legal services to Conoco, and further encompass the perceptions and observations of Conoco's attorneys and management as it related to the Cauthron and Mizell claims, as well as strategies for defending those claims." *See* Conoco's Memorandum in Support of Protective Order, p. 7. Thus Conoco concludes that discovery of such documents is precluded under the attorney-client privilege and/or work product immunity.

In response to Conoco's asserted protections, Boh claims that Conoco has waived any privilege which may have attached to the requested information because Conoco has placed the reasonableness of the settlement at issue by filing this indemnity claim. Boh also argues that the crime/fraud exception to the discovery protections entitles Boh to discovery of the requested information. Additionally, Boh states that with respect to Conoco's claim of work-product, Boh has demonstrated a "substantial need" for this information and "undue hardship" in obtaining this information by other means.[2]

The attorney-client privilege and the work-product doctrine are two distinct protections which can be invoked to exempt certain information from discovery. Both have been invoked by Conoco and will be discussed below.

### 1. Attorney–Client Privilege

▆▆▆ The attorney-client privilege generally protects confidential communications made by a client to his lawyer for the purpose of obtaining legal advice. *Guzzino v. Felterman*, 174 F.R.D. 59, 60–61 (W.D.La. 1997), citing *Hodges, Grant, & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985). "In a diversity action involving state law claims, [the] court must apply the law of the state where it sits concerning the scope and application of the claimed attorney-client privilege." *Scherer v. Latter*, 1998 WL 205417 (E.D.La.1998); Fed.R.Evid. 501;

*Exxon Corporation v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 1007, 1008–09 (E.D.La. 1995); C. Wright & K. Graham, Federal Practice and Procedure, Evidence § 5433, at 858 & n. 35. Thus, the court must apply Louisiana law to determine whether the information sought by Conoco is protected by the attorney-client privilege. *Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 875 (5th Cir.1991); *Scherer v. Latter*, 1998 WL 205417 (E.D.La.1998).

Under the Louisiana Code of Evidence, the attorney-client privilege is defined in pertinent part as follows:

**B. General rule of privilege.** A client has a privilege to refuse to disclose, and to prevent another person from disclosing a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

(2) Between the lawyer and a representative of the lawyer.

(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.

(4) Between representatives of the client or between the client and a representative of the client.

(5) Among lawyers and their representatives representing the same client.

(6) Between representatives of the client's lawyer.

▆▆▆ A communication is "confidential" under the Louisiana Code of Evidence, art. 506(A)(5) if it is not intended to be disclosed except in the "furtherance of obtaining or

---

**2.** Initially Boh defends against Conoco's assertion of privileges on the basis that Conoco did not provide a privilege log as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure. This argument was raised during the telephone conference with the undersigned, and the parties were informed that the court would consider the Motion for Protective Order without a privilege log but that one would be ordered by the court if the need for such a privilege log arose.

rendering professional legal services for the client." "Communications with attorneys made for purposes other than giving or obtaining an opinion on the law or legal services are not protected by the attorney-client privilege." *Scherer v. Latter*, 1998 WL 205417, at *4 (E.D.La.1998); La.Code Evid. Art. 506(B). Additionally, in Louisiana, the attorney-client privilege does not protect all information obtained by an attorney because of his position as a legal advisor. *See* La. C.E. art. 506, comment (i); La.C.E. art. 509, comment.[3]

█ "A party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable." *Pitard v. Stillwater Transfer & Storage*, 589 So.2d 1127, 1131 (La.App. 4 Cir.1991); *Exxon Corporation*, 903 F.Supp. at 1009; *In Re Shell Oil Refinery*, 812 F.Supp. 658, 661 (E.D.La. 1993); *Smith v. Kavanaugh, Pierson, & Talley*, 513 So.2d 1138, 1143 (La.1987). In order for the attorney-client privilege to apply, Conoco must demonstrate that the communications at issue are confidential in nature, made between a client and a lawyer or their representatives, and made for the purpose of "facilitating the rendition of professional legal services."

Conoco claims that the testimony and documents which Boh seek are protected by the attorney-client privilege.[4] Boh claims that the attorney-client privilege does not apply to the discovery requests which Boh has made. Additionally, Boh contends that if the attorney-client privilege does apply, it has been waived by Conoco.

Because of Conoco's objections to the discovery requests made by Boh, in a letter dated April 27, 1998, Boh acknowledged that confidential communications made to an attorney may be protected by the attorney-client privilege and attempted to clarify its discovery requests. In this letter, counsel for Boh states that Boh is not seeking the disclosure of confidential statements made by Conoco to its attorneys. Instead, counsel represents that "what we are seeking is Conoco's assessments of its potential exposure to a punitive damage award, and it seems to us that the best and most reliable source of that information are letters to Conoco from its attorneys and to Conoco executives from Marina Pita." *See* Conoco's Exhibit 2.

Conoco argues that the clarification by Boh does not change the fact that the information sought is protected from disclosure by the attorney-client privilege. Conoco states in its memorandum that "[i]t is clear that all communications between Conoco's attorneys and Conoco that are responsive to Request Nos. 1–4 were made for the purpose of facilitating the rendition of professional legal services to Conoco in defending the Cauthron and Mizell claims." *See* Conoco's Supplemental Memorandum in Support of Motion for Protective Order, p. 5.

Under Louisiana law, the attorney-client privilege protects communications between a client and his or her attorney. Legal advise or opinions given by an attorney to his client fall within the protections of the attorney-client privilege. *Diaz v. Delchamps*, 1997 WL 680602, at *3 (E.D.La.1997); *Hebert v. Anderson*, 96–0994 (La.App. 4 Cir. 9/18/1996), 681 So.2d 29 (letter from attorney

---

**3.** Although the Louisiana Code of Evidence clearly states that the attorney-client privilege may not shield from discovery all information obtained by an attorney by virtue of his or her position as a legal representative, this is not to say that such information is necessarily discoverable. It may be protected by the immunity offered by the work-product doctrine which will be discussed later.

**4.** In support of its assertion of privilege, Conoco does not clearly separate its assertion of attorney-client privilege from work product immunity. Conoco states as follows:

As an initial matter, much of the testimony and documents set forth [in Boh's discovery requests]-on their face- are protected by the attorney-client and/or work product privileges. They relate to Conoco's defense and settlement strategies in defending the Cauthron and Mizell claims, and were written to or by Conoco and its attorneys to facilitate the rendition of professional legal services to Conoco, and further encompass the perceptions and observations of Conoco's attorneys and management as it related to the Cauthron and Mizell claims, as well as strategies for defending those claims.
Conoco's Memorandum in Support of Motion for Protective Order, pp. 6–7.

to client was protected by attorney client privilege).

▮▮▮ To the extent that Conoco is asserting the attorney-client privilege with respect to opinion letters written by Conoco's attorneys to Conoco regarding Conoco's potential liability in the Cauthron and Mizell cases, this court finds that such communications are privileged. Nonetheless, this information is subject to disclosure in discovery if the attorney-client privilege has been waived.

▮▮▮ The attorney-client privilege may be waived by placing the privileged communications "at issue." However, placing a privileged communication "at issue" under Louisiana law means "that the waiving party 'pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail.' " *Scherer v. Latter,* 1998 WL 205417, *3, citing *Dixie Mill Supply Company v. Continental Casualty Company,* 168 F.R.D. 554, 555–56 (E.D.La.1996)(internal quotations omitted.) The fact that the privileged communication is referred to in the litigation or is relevant to the subject matter of the litigation is not enough to constitute a waiver under Louisiana law. *Id.* The focus of the court's inquiry must be on the intended use of the privileged communication by Conoco, not on Boh's alleged need for the material. *Dixie Mill,* 168 F.R.D. at 557.

Conoco has brought this action against Boh seeking to recover under a contractual indemnity agreement. In order to recover on this indemnity claim, Conoco must establish that an indemnitee-indemnitor relationship exists and that the indemnitee "acted in accordance with equitable indemnity principles in making the settlement," i.e. that the settlement was reasonable. *Parfait,* 484 F.2d at 301. Thus, Boh argues that Conoco has waived its attorney-client privilege by putting the reasonableness of the settlement and the basis for Conoco's liability "at issue" by seeking indemnity from Boh for the amount paid in settlement to the Cauthrons and Mizells.

Considering the arguments of the party, this court finds that by seeking indemnity under the contract, Conoco has put at issue the basis for its liability, its liability analysis, and the reasonableness of the settlement. Conoco claims that it does not intend to rely on any withheld documents to support its indemnity claim. Nevertheless, the court finds that Conoco will inevitably be forced to draw upon privileged communications to show that it is entitled to indemnity and that the settlement was reasonable. Accordingly, the court finds that the attorney-client privilege, otherwise applicable to confidential communications between a client and his lawyer regarding Conoco's liability and decision to settlement, has been waived.

This, however, does not end the court's inquiry. Conoco has also asserted that this information is protected from discovery by the work-product doctrine.

*2. Work Product Immunity*

▮▮▮ "The work-product doctrine is a judicially created immunity to prevent a party to a lawsuit from receiving the benefits of an opposing counsel's preparations for trial." *In Re Leslie Fay Companies Securities Litigation,* 161 F.R.D. 274, 279 (S.D.N.Y.1995); *see also Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). Thus, this doctrine is designed to protect the adversary process "by safeguarding the fruits of an attorney's trial preparations from discovery attempts of an opponent." [5] *Shields v. Sturm, Ruger, & Co.,* 864 F.2d 379, 382 (5th Cir.1989); *Guzzino,* 174 F.R.D. at 62. The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *In Re Leslie Fay,* 161 F.R.D. at 280; *Pacamor Bearings,* 918 F.Supp. at 512.

▮▮▮ The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of

---

**5.** Whether work-product produced in one case is always protected from discovery in another case is subject to some dispute. Some courts require a close relationship between parties or issues in subsequent litigation for the work-product doctrine to apply. *See* 6 Moore's Federal Practice § 26.70[3][a] (Matthew Bender 3d ed.); Wright, Miller, & Marcus, Federal Practice and Procedure: Civil 2d § 2024 (West 2d ed.).

Civil Procedure.[6] *Dunn,* 927 F.2d at 875; *Nance v. Thompson Medical Co.,* 173 F.R.D. 178, 181 (E.D.Tex.1997); *Schwegmann Westside Expressway v. Kmart Corporation,* 1995 WL 510071, *5 (E.D.La.1995). The work-product doctrine protects documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation. *Hickman v. Taylor, supra.; Thomas v. General Motors Corp.,* 174 F.R.D. 386, 388 (E.D.Tex.1997); *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975); *Guzzino,* 174 F.R.D. at 62; *Nance,* 173 F.R.D. at 181. The work-product doctrine does not protect materials assembled in the ordinary course of business. *Guzzino,* 174 F.R.D. at 63, citing *United States v. El Paso Co.,* 682 F.2d 530 (5th Cir.1982); *Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 512–13 (D.N.H.1996); *Martin v. Valley,* 140 F.R.D. 291, 304 (S.D.N.Y.1991); *Sanders v. Alabama State Bar,* 161 F.R.D. 470 (M.D.Ala.1995). "This is true even if the party is aware that the document may also be useful in the event of litigation." *Pacamor Bearings,* 918 F.Supp. at 513 (internal quotations omitted).

The protection offered by the work-product doctrine is not absolute. Documents determined to be work-product may still be subject to disclosure in discovery under certain circumstances. The party who is seeking production of the document otherwise protected by the work product doctrine bears the burden of establishing that the materials should be disclosed. *Hodges, Grant, & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985); *Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457, *2 (N.D.Tex.1997). The burden on the party seeking production varies with respect to the nature of the work product sought.

"Rule 26(b)(3) recognizes a distinction between 'ordinary' and 'opinion' work product." *Thomas,* 174 F.R.D. at 388, citing *Sporck v. Peil,* 759 F.2d 312 (3rd Cir. 1985). "Ordinary" work product will be ordered produced "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3); *Thomas,* 174 F.R.D. at 388. "Opinion" work product, that which conveys the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," has been accorded almost absolute protection from discovery by some courts. *See Thomas,* 174 F.R.D. at 388; *Sporck,* 759 F.2d at 316; *In Re International Systems,* 693 F.2d 1235, 1240 (5th Cir.1982). Nevertheless, opinion work product becomes subject to disclosure when (1) "mental impressions are at issue in a case and the need for the material is compelling" *Holmgren v. State Farm Mutual Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992); *Biggers v. State Farm Insurance Co.,* 1993 WL 408375 (E.D.La.1993); *Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D.Pa. 1973); *Dixie Mill,* 168 F.R.D. at 559 (to obtain attorney opinion work product, plaintiff must show a compelling need under Rule 26(b)(3)); and (2) pursuant to the crime-fraud exception to discovery. *In Re International Systems,* 693 F.2d at 1242.

The parties seem to agree that at least some of the information sought in Boh's discovery request constitutes opinion work product.[7] In order to obtain discovery of opinion work product under either of the exceptions, the party seeking discovery of

---

**6.** In *Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir.1991), the Fifth Circuit held that under Rule 501 of the Federal Rules of Evidence, in diversity cases state law applied to claims of attorney-client privilege. Nevertheless, in that same case, the Fifth Circuit applied federal law to the plaintiff's claim that certain information was immune from discovery under the work-product doctrine. Accordingly, this court will apply the federal procedural rule found in Rule 26(b)(3) of the Federal Rules of Civil Procedure when considering Conoco's claim that the requested documents are immune from discovery under the work-

product doctrine. *See also* 6 Moore's Federal Practice, § 26.70[7] (Matthew Bender 3d ed.)(work product doctrine is governed by the federal standard, even in diversity cases).

**7.** Although the court has not specifically distinguished the types of information sought by Boh, it appears as if some of the documents and information sought relate to the facts of the underlying claims of Cauthron and Mizell such as doctors' reports, expert reports, and statements from Cauthron and Mizell regarding their injuries. This type of factual information does not

opinion work product bears the burden of showing that the exception has been met.

Boh claims that it is entitled to discovery of this material because this "information goes to the very heart of Boh's defenses." Specifically, Boh argues that the mental impressions and analysis of Conoco's attorneys regarding the basis of Conoco's liability and the reasonableness of the amount paid in settlement in the Cauthron and Mizell claims are at issue and that Boh needs the information sought to determine whether the settlement was reasonable and based solely on compensatory damages. Boh also claims that it has no other means of obtaining this information.

As previously discussed with respect to the attorney-client privilege, by seeking indemnity under the contract, Conoco has placed at issue the basis for its liability, its liability analysis, and the reasonableness of the settlement paid in the Cauthron and Mizell cases. Further, the court finds that Boh has shown a compelling need and no alternative means of obtaining this information. Therefore, this court finds that Conoco's immunity under the work-product doctrine for its attorney work product, whether ordinary or opinion, has been waived.

For the reasons stated above, it is ORDERED that the motion for protective order be DENIED with respect to Items 10, 11, 12, 17, and 18 of the 30(b)(6) Deposition Notice and Items 1–4 of the Second Request for Production of Documents. Conoco is hereby ORDERED to produce these documents to Boh pursuant to its discovery requests. However, Conoco has also requested that any disclosure of this information be done pursuant to a confidentiality agreement. Boh has stated that it has no objection to such an agreement. Therefore, prior to production of these documents, Conoco is entitled to draft a confidentiality agreement to be signed by both parties and approved by the court. Conoco has thirty (30) days in which to comply with the court's order.

May 19, 1998.

fall within the work-product doctrine and is sub-